1  Marie Burke Kenny (Bar No. 183640)
   E-mail:     marie.kenny@procopio.com
2  Brook T. Barnes (Bar No. 276667)
   E-mail:     brook.Barnes@procopio.com
3  Nicholas Kawuka (Bar No. 297579)
   E-mail:     nicholas.kawuka@procopio.com
4  PROCOPIO, CORY, HARGREAVES &
       SAVITCH LLP
5  525 B Street, Suite 2200
   San Diego, CA 92101
6  Telephone: 619.238.1900
   Facsimile: 619.235.0398
7
   Attorneys for Plaintiffs Charles Boykin and
8  Dexcom, Inc.

9               UNITED STATES DISTRICT COURT

10          FOR THE SOUTHERN DISTRICT OF CALIFORNIA

11

12  DEXCOM, INC. and CHARLES BOYKIN,          Case No. 3:21-CV-01677-H-LL

13               Plaintiffs,                  **MEMORANDUM OF POINTS
                                              AND AUTHORITIES IN
14  v.                                        SUPPORT OF PLAINTIFFS'
                                              APPLICATION FOR
15  MEDTRONIC, INC.,                          TEMPORARY RESTRAINING
                                              ORDER FOR INJUNCTIVE
16               Defendant.                   RELIEF**

17                                            **[FRCP 65(B)]**

18                                            Date:    TBD
                                              Time:    TBD
19                                            Dept:    15A
                                              Judge:   Hon. Marilyn L. Huff
20

21

22

23

24

25

26

27

28
                                    1

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ................................................................................6

II.     STATEMENT OF FACTS .................................................................7

        A.      The Parties ..................................................................................7

        B.      When Boykin Worked for Medtronic in Texas, Medtronic Required Boykin to Sign an Employee Agreement Containing Broad Post-Employment Restraints on Competition. ..................................................8

        C.      After Medtronic Terminated Boykin's Employment, Boykin Started Working for Dexcom in California, Where He Also Resides. ..............10

        D.      Medtronic Claimed that Boykin's Employment with Dexcom in California Violates the Restrictive Covenants in his Employee Agreement, Ignored Plaintiffs' Repeated Assurances that They were not in Possession of or Using Medtronic's Confidential Information, and Sued Boykin and Dexcom in Minnesota State Court. ...................11

        E.      Both Boykin and Dexcom Will Suffer Immediate and Irreparable Harm if Boykin is Precluded from Working for Dexcom in California. .................................................................................14

III.    ARGUMENT ...................................................................................17

        A.      Plaintiffs Demonstrated a Likelihood of Success on the Merits ..........17

                1.      Plaintiffs Will Prevail on their Claims for Declaratory Relief. ....18

                2.      Plaintiffs Will Prevail on their Claim for Unfair Competition. ....22

        B.      Plaintiffs are Likely to Suffer Irreparable Harm in the Absence of a TRO. ..............................................................................23

        C.      The Balance of Equities Tip in Plaintiffs' Favor. ...............................24

        D.      The Requested TRO is in the Public Interest. .......................................25

IV.     CONCLUSION ................................................................................26

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*American Trucking Assns., Inc. v. City of Los Angeles*
  559 F.3d 1046 (9th Cir. 2009) ........................................................................... 17

*Barker v. Insight Global, LLC*
  2019 WL 176260 (N.D. Cal. 2019) .................................................................... 21

*Bayer Corp. v. Roche Molecular Sys. Inc.*
  72 F.Supp.2d 1111 (N.D. Cal. 1999) ................................................................. 25

*Cat Tech LLC v. Tubemaster, Inc.*
  528 F.3d 871 (Fed. Cir. 2008) ........................................................................... 18

*Chen v. PMC Bancorp*
  2010 WL 596421 (S.D. Cal. 2010) ..................................................................... 17

*Couch v. Morgan Stanley*
  2015 WL 4716297 (E.D. Cal. 2015) ................................................................... 22

*Globespan Inc. v. O'Neill*
  151 F.Supp.2d 1229 (C.D. Cal. 2001) ................................................................ 25

*Karp v. Avella of Deer Valley Inc.*
  2013 WL 5435212 (D. Az. 2013) ....................................................................... 24

*Lakeland Tours, LLC v. Bauman*
  2014 WL 12570971 (S.D. Cal. 2014) ................................................................. 23

*Latona v. Aetna U.S. Healthcare Inc.*
  82 F. Supp. 2d 1089 (C.D. Cal. 1999) ............................................................... 19

*Moncrief v. Washington Mutual, F.A.*
  2010 WL 1407241 (S.D. Cal. 2010) ................................................................... 17

*Philo v. Giftano LLC*
  2013 WL 12097545 (S.D. Cal. 2013) ................................................................. 24

*Puricle, Inc. v. Church & Dwight Co., Inc.*
  568 F. Supp. 2d 1144 (C.D. Cal. 2008) ............................................................. 24

3

*R.M. & G. Products v. R.E.F. Golf Co.*
　1994 WL 653531 (N.D. Ohio 1994) ................................................................ 25

*Rhoades v. Avon Prods., Inc.*
　504 F.3d 1151 (9th Cir. 2007) ........................................................................ 18

*Scott v. Snelling and Snelling, Inc.*
　732 F. Supp. 1034 (N.D. Cal. 1990) ............................................................... 20

*Stormans, Inc. v. Selecky*
　586 F.3d 1109 (9th Cir. 2009) ........................................................................ 25

*WeRide Corp. v. Huang*
　379 F. Supp. 3d 834 (N.D. Cal. 2019) ............................................................ 21

**STATE CASES**

*Advanced Bionics Corp. v. Medtronic, Inc.*
　29 Cal. 4th 697 (2002) .................................................................................... 21

*AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc.*
　28 Cal. App. 5th 923 (2018) ........................................................................... 21

*Application Group, Inc. v. Hunter Group, Inc.*
　61 Cal. App. 4th 881 (1998) ..................................................................... 20, 22

*D'Sa v. Playhut, Inc.*
　85 Cal. App. 4th 927 (2001) ........................................................................... 22

*Diodes v. Franzen*
　260 Cal. App. 2d 244 (1968) .......................................................................... 19

*Dowell v. Biosense Webster, Inc.*
　179 Cal. App. 4th 564 (2009) ......................................................................... 22

*Edwards v. Arthur Andersen LLP*
　44 Cal. 4th 937 (2008) ......................................................................... 19, 20, 21

*Nedlloyd Lines B.V. v. Superior Court*
　3 Cal.4th 459 (1992) ...................................................................................... 20

*Robinson v. U–Haul Co. of Cal.*
　4 Cal. App. 5th 304 (2016) ............................................................................. 23

*Schlage Lock Co. v. Whyte*
 101 Cal. App. 4th 1443 (2002) ....................................................................20, 25

**FEDERAL STATUTES, REGULATIONS, AND RULES**

28 U.S.C. § 2201 .................................................................................................. 18

Rule 65(b) of the Federal Rules of Civil Procedure ................................................ 17

**STATE STATUTES, REGULATIONS, AND RULES**

Business and Professions Code
 § 16600 .........................................................................15, 19, 20, 21
 § 17200 .............................................................................6, 7, 18, 23

California Code of Civil Procedure § 1060 ........................................................... 17

**OTHER AUTHORITIES**

6 B. Witkin, California Procedure (5th ed. 2008) *Provisional Remedies*, § 293 .... 24

## I.   INTRODUCTION

Defendant Medtronic, Inc. is aggressively seeking to enforce its overly broad post-employment contractual restraints on competition against its former employee, Plaintiff Charles Boykin, who now resides and works in California, in contravention of California's fundamental and long-standing policy and jurisprudence prohibiting ***all*** contractual restraints on competition. Not only does Medtronic claim (incorrectly) that its restrictive covenants are enforceable against a California employee and resident, it also sued Boykin and his new employer, Plaintiff Dexcom, Inc., in Minnesota state court. Without providing Boykin and Dexcom an opportunity to be heard, a Minnesota state trial court signed Medtronic's proposed temporary restraining order almost verbatim and granted it temporary injunctive relief purporting to immediately preclude Boykin from working for Dexcom in California during the pendency of this dispute. In a transparent effort to stymie lawful and protected competition, Medtronic pressed forward with its meritless lawsuit even after Boykin and Dexcom provided repeated assurances that they were not in possession of or using any purported confidential information belonging to Medtronic. Further, Boykin and Dexcom provided detailed explanations, with supporting legal authority, as to why Medtronic's restrictive covenants are unenforceable against Boykin in California.

In this action, Plaintiffs Boykin and Dexcom seek a judicial declaration that California law governs the enforceability of the post-employment Non-Compete and Non-Solicitation of Employees restrictive covenants in Boykin's Employee Agreement with Medtronic, and that both provisions are void and unenforceable under California law. They also seek a finding that Medtronic engaged in unfair and unlawful business practices in violation of California Business and Professions Code section 17200 by attempting to enforce their overbroad and unlawful restrictive covenants against a California employee. Under clear and long-standing California law and jurisprudence, Plaintiffs will prevail on both claims.

Additionally, Plaintiffs will suffer irreparable harm unless the Court issues a temporary restraining order preserving the status quo pending an opportunity to rule on a motion for preliminary injunction, *i.e.*, declaring that Medtronic cannot use its unlawful restrictive covenants by taking any actions within this Court's jurisdiction to bar Boykin from working for Dexcom in California.  Simply put, Boykin cannot be without work and Dexcom cannot be without Boykin without substantial and irreparable harm to Boykin's personal and family finances and livelihood, and Dexcom's day-to-day business operations.

Finally, the balance of equities weigh in favor of issuing the temporary restraining order and the temporary restraining order would serve the important public interest in maintaining a fair and competitive marketplace and employee mobility.

Plaintiffs respectfully request that the Court issue a temporary restraining order declaring that Medtronic cannot use its unlawful restrictive covenants to bar Boykin from working for Dexcom in California.

## II.     STATEMENT OF FACTS

### A.     The Parties

Plaintiff Dexcom was formed in 1999, and has its company headquarters in San Diego, California.  Chuck Donlon Declaration ("Donlon Decl.") at ¶3.  Dexcom's mission is to empower people to take control of diabetes through innovative continuous glucose monitoring (CGM) systems.  *Id.*  Over the years, Dexcom emerged as a leader of diabetes care technology.  *Id.*  By listening to the needs of users, caregivers, and providers, Dexcom simplifies and improves diabetes management around the world.  *Id.*  Dexcom employs on-site and remote workers in California, as well as out-of-state remote workers.  *Id.*

Defendant Medtronic is a medical technology company with its principal place of business in Fridley, Minnesota.  Medtronic has offices and employees in numerous locations outside of Minnesota, including in California.  Brook T. Barnes Declaration

7

MEMORANDUM OF POINTS AND AUTHORITIES ISO APPLICATION FOR TEMPORARY RESTRAINING ORDER FOR
INJUNCTIVE RELIEF
130494-00000002/5451095.2                                                          CASE NO 3:21-CV-01677-H-LL

("Barnes Decl.") at ¶3 & Ex. 1.

Plaintiff Boykin is a seasoned operations manager with over 30 years of experience in all strategic and tactical aspects of change management and customer service for projects, initiatives and organizational transformation. Charles Boykin Declaration ("Boykin Decl.") at ¶3.

### B. When Boykin Worked for Medtronic in Texas, Medtronic Required Boykin to Sign an Employee Agreement Containing Broad Post-Employment Restraints on Competition.

Boykin started working for Medtronic in 2014. Between December 29, 2014 until his employment was terminated effective January 2, 2021, Boykin was living and working for Medtronic in San Antonio, Texas. During this time, he worked for Medtronic as Senior Customer Service Manager in its diabetes division. Boykin Decl. at ¶4. During his employment with Medtronic, Boykin worked for the company's Diabetes Operating Unit, which is headquartered in Northridge, California, and he traveled there each quarter and would work in California for one work week each visit. Boykin Decl. at ¶ 4.

On or about March 4, 2020, nearly six years after he began working at Medtronic, Medtronic required Boykin to sign a new at-will employment agreement, entitled "Employee Agreement." Boykin Decl. at ¶5 & Ex. 11. Unassisted by counsel, Boykin signed the Employee Agreement as a condition to receive his increased salary and "stay bonus" instead of pursuing a new opportunity in Medtronic's cardiovascular division. *Id.*

Boykin's supervisor Michael Cox presented the Employment Agreement to him in a conversation in his office in Texas that lasted approximately two minutes. Boykin Decl. at ¶6. Cox informed Boykin that he needed to sign the Employment Agreement in order to receive his stay bonus. *Id.* He did not mention that the agreement included a two-year non-compete. *Id.* Boykin relied on Cox's representation, and did not

closely review the Employment Agreement before immediately signing it. *Id.* He understood the agreement was a standard confidentiality agreement, and was not aware the agreement included a two-year non-compete. *Id.*

The Employee Agreement contained broad provisions titled "Restrictions on Competition" (the "Non-Complete Clause") & "Prohibition on Solicitation of MEDTRONIC Employees." (the "Non-Solicitation" clause) that purport to impose on Boykin a two-year post-employment non-compete (with no geographic limitations) and a one-year post-employment prohibition on soliciting Medtronic's employees. Barnes Decl. at ¶4; Boykin Decl. at ¶¶5-7 & Ex. 11.

The Non-Compete Clause in the Employee Agreement provides:

> Employee agrees that while employed by MEDTRONIC, and for two (2) years after the last day Employee is employed by MEDTRONIC, Employee will not be employed by or otherwise perform services for a CONFLICTING ORGANIZATION in connection with or relating to a COMPETITIVE PRODUCT or COMPETITIVE RESEARCH AND SUPPORT. If, however, during the last twelve (12) months of employment with MEDTRONIC, Employee had no management duties or responsibilities and was engaged exclusively in sales activities, including selling, soliciting the sale, or supporting the sale of MEDTRONIC PRODUCTS through direct contact with MEDTRONIC CUSTOMERS, this restriction will be for a duration of only one (1) year after the last day Employee is employed by MEDTRONIC, and will prohibit Employee only from soliciting, selling to, contacting, or attempting to divert business from, whether directly or by managing, directing or supervising others, any MEDTRONIC CUSTOMER on behalf of a CONFLICTING ORGANIZATION in connection with or relating to a COMPETITIVE PRODUCT or COMPETITIVE RESEARCH AND SUPPORT.

Barnes Decl. at ¶4; Boykin Decl. at ¶¶5,6 & Ex.11.

The Non-Solicitation Clause in the Employee Agreement provides:

> Employee agrees that at all times while employed by MEDTRONIC, and for one (1) year thereafter, Employee will not directly or indirectly solicit, cause to be solicited, or participate in or promote the solicitation of any person to terminate that person's employment with MEDTRONIC or to breach that person's employment agreement with MEDTRONIC, or to perform services for or become employed by a CONFLICTING ORGANIZATION.

Barnes Decl. at ¶4; Boykin Decl. at ¶¶5,6 & Ex. 11.

The Employee Agreement also obligated Boykin as follows:

> In the event Employee's employment with MEDTRONIC terminates, Employee agrees that during the term of the restrictions described in Section 4.1, Employee will immediately inform MEDTRONIC if Employee has accepted an offer of employment from any new employer, and shall immediately disclose to MEDTRONIC in writing the identity of any new employer, the job title of Employee's new position, and a description of any services to be rendered to that employer.  In addition, Employee agrees to respond within ten (10) days to any written request from MEDTRONIC for further information concerning Employee's work activities sufficient to provide MEDTRONIC with assurances that Employee is not violating any of the obligations Employee has undertaken in this Agreement.

Barnes Decl. at ¶4; Boykin Decl. at ¶¶5,6 & Ex. 11.

## C. After Medtronic Terminated Boykin's Employment, Boykin Started Working for Dexcom in California, Where He Also Resides.

When Medtronic representatives Michael Cox and Rebecca Garza notified Boykin of Medtronic's decision to terminate his employment in late 2020, Boykin was on medical leave recovering from a back injury.  Boykin Decl. at ¶8. Cox and Garza told Boykin that Medtronic would not seek reimbursement of the stay bonus it had paid him. *Id.* Although he disagreed with Medtronic's decision, he did not challenge it at the time since he was already planning on moving on anyway. *Id.* In addition to

10

his general dissatisfaction with Medtronic, Boykin had heard rumors that Medtronic was going to do a mass layoff and that his team would be included in the layoff. *Id.* No one from Medtronic informed him that he had signed a non-compete or reminded him about any obligations in the Employment Agreement. *Id.*

In or around February 2021, after Medtronic terminated his employment, Boykin started working at Dexcom as its Senior Director Global Technical Support. Donlon Decl. at ¶4; Boykin Decl. at ¶9 & Ex. 12. When Boykin started working for Dexcom, he was still living in Texas, so he began my work remotely. He recently sold his family's home in Texas and relocated to California. Boykin Decl. at ¶9. Boykin worked, and continues to work, for Dexcom in San Diego, California. Boykin Decl. at ¶11. Boykin is living in San Diego County in California. *Id.* Boykin expects to maintain a residence in California throughout his employment with Dexcom and currently has a California mailing address. *Id.* Boykin received his California driver's license and intends to reside in San Diego, County. *Id.* Dexcom pays California income and payroll taxes on wages earned by Boykin. Donlon Decl. at ¶4. Boykin sold his residential property in the State of Texas. Boykin Decl. at ¶¶9, 11.

**D.    Medtronic Claimed that Boykin's Employment with Dexcom in California Violates the Restrictive Covenants in his Employee Agreement, Ignored Plaintiffs' Repeated Assurances that They were not in Possession of or Using Medtronic's Confidential Information, and Sued Boykin and Dexcom in Minnesota State Court.**

After it learned of Boykin's employment with Dexcom in or about April 2021, Medtronic launched a campaign of threats and exaggerated accusations against Boykin relating to disputes regarding prior expense reimbursements and his non-compete, in a transparent effort to prevent Boykin from exercising his protected right to pursue his chosen profession. Barnes Decl. at ¶¶5,6 & Exs. 2-4. Between April and July 2021, Medtronic sent numerous letters to Boykin and Dexcom in which, among other things,

it demanded assurances that Boykin would comply with his Employee Agreement and claimed that:

- Boykin must abide by the Non-Compete and Non-Solicitation provisions in his Employee Agreement while working for Dexcom, "a competitor of Medtronic's Diabetes business.";

- "Medtronic is extremely concerned about the confidential information Mr. Boykin may be sharing, and we don't understand how Mr. Boykin can work for Dexcom [sic] without violating his noncomplete olbigations [sic] to Medtronic.";

- The terms in Medtronic's Employee Agreement were enforceable against Dexcom and Boykin irrespective of the fact that Boykin now lived in California;

- "[Boykin's] employment with Dexcom violates both the non-competition obligation in Section 4.1 and the confidentiality obligation in Section 3.6 of the Medtronic Employee Agreement.  These two provisions work together to ensure that employees who are provided with and help contribute to Medtronic CONFIDENTIAL INFORMATION during the course of their employment with Medtronic do not provide services to CONFLICTING ORGANIZATIONS for a period of two (2) years post-employment with Medtronic."; and

- Boykin's "continued employment with Dexcom" and "*potential* use of Medtronic's Confidential Information" constituted violations of his Employee Agreement.

*Id.*

Boykin and Dexcom made every effort to assuage Medtronic's claimed concerns.  Boykin informed Medtronic about his new position, and reassured Medtronic that he had returned all Medtronic property and materials and had not disclosed and would not disclose any of Medtronic's proprietary information.  Boykin Decl. at ¶10 & Ex. 13.  On its part, Dexcom provided repeated written assurances that

Boykin had returned all Medtronic property and materials, that he had not disclosed and did not intend to disclose any of Medtronic's confidential information to any company or third party, and that Dexcom had expressly instructed Boykin not to share Medtronic's confidential information and had received his assurance that he would not do so.  Barnes Decl. at ¶7 & Ex. 5.  Plaintiffs also provided Medtronic with a detailed explanation, supported with legal authority, as to why its Non-Compete provision was void and unenforceable in California, where Boykin resides (as well as Texas, where Boykin formerly resided), and Medtronic's inevitable disclosure theory that Boykin could not work for Dexcom without violating his noncompete obligations had been rejected by California courts as an impermissible restraint on employment mobility. *Id*. at ¶8 & Ex. 6.

After Plaintiffs provided yet another set of assurances and explanation of the unenforceability of Medtronic's restrictive covenants on July 19, 2021, Medtronic ceased further communications with Plaintiffs.  Barnes Decl. at ¶9.  Instead, on or about September 10, 2021, Medtronic filed suit against Dexcom and Boykin in the County of Anoka, in the State of Minnesota (the "Minnesota action"), alleging in pertinent part that Boykin breached his Employee Agreement with Medtronic by joining Dexcom as its Senior Director Global Technical Support, and by allegedly disclosing Medtronic's confidential information for Dexcom's benefit.  *Id*. & Ex. 7. In the same lawsuit, Medtronic also alleged that Dexcom had tortiously interfered with the Employee Agreement between Boykin and Medtronic by employing Boykin as its Senior Director Global Technical Support to provide services for Dexcom with knowledge of the Employee Agreement.  *Id*.  Medtronic has made clear that it intends to seek a temporary injunction order enjoining Boykin from working for Dexcom. Barnes Decl. at ¶10.  Medtronic has provided no evidence that Boykin relied upon, used, or disclosed confidential or proprietary information while working with Dexcom.  *Id*.  Dexcom is challenging the Minnesota action on several grounds,

including lack of jurisdiction over Dexcom.  *Id.*

On September 14, 2021, without allowing Plaintiffs an opportunity to be heard, the first Anoka County, Minnesota trial court judge assigned to this matter signed Medtronic's proposed temporary restraining order almost verbatim.  Barnes Decl. at ¶11 & Ex. 9. Before Medtronic received notice that its TRO had been entered, Medtronic exercised its right under the Minnesota Rules of Civil procedure to remove the first judge, and a second judge has now been assigned to the Minnesota matter. Barnes Decl. at ¶ 11. On September 27, 2021 Boykin and Dexcom obtained a hearing date for a motion to dissolve the September 14, 2021 temporary restraining order. Barnes Decl. at ¶11.

Importantly, Dexcom has not received or relied upon any of Medtronic's confidential and/or proprietary information as a result of Boykin's employment. Donlon Decl. at ¶5.  Indeed, Boykin received several written reminders (including his offer letter and the company's Employee Proprietary Information and Inventions Agreement)prior to employment and during employment to not disclose, use or rely upon any of Medtronic's confidential and/or proprietary information while performing work at Dexcom.  *Id*.

**E.     Both Boykin and Dexcom Will Suffer Immediate and Irreparable Harm if Boykin is Precluded from Working for Dexcom in California.**

Medtronic is currently seeking a preliminary injunction in the Minnesota action that would preclude Boykin from performing any work for Dexcom during the pendency of the lawsuit.  Barnes Decl. at ¶11 & Ex. 9.  Both Boykin and Dexcom will suffer immediate and irreparable harm if Boykin is barred from working for Dexcom in California.

Boykin is the primary wage earner for his family and the family's source of employer-provided health insurance.  Boykin Decl. at ¶12. Both Boykin's spouse and

adult child have Type I diabetes.  Boykin Decl. at ¶12. Boykin's spouse has severe diabetes and autoimmune issues which significantly hinder her from working because of these existing medical conditions.  *Id*.  If Boykin is left without an income during the pendency of either this action or the Minnesota action (or even pending an opportunity for the Court in this action to rule on a motion for preliminary injunction), he and his family will suffer significant and irreparable financial hardship after spending significant financial resources moving to and establishing their family in California.  *Id*.  Additionally, Boykin's family relies upon the medical insurance coverage provided by Dexcom to continue the medical care for his family. *Id*.

Boykin chose to work for Dexcom because of the personal experiences and challenges his family has faced living with diabetes, and Medtronic is seeking to preclude him from working for any company with similar diabetes products.  Boykin Decl. at ¶13. The net result is that Boykin is not able to pursue a meaningful career in this industry unless he works for Medtronic, who decided to terminate his employment for purported cause. *Id*. This restriction on Boykin's employment at Dexcom unfairly precludes Boykin form pursuing his passion in this industry—empowering Medtronic with an unequal and prejudicial authority to declare it does not want Boykin as an employee and no competitor can employ him either. *Id*. This is the definition of unlawful restraint on competition, and the purpose behind Business and Professions Code section 16600.

Dexcom is relying on Boykin to perform customer satisfaction management that is essential to Dexcom's day-to-day operations and success as a company.  Donlon Decl. at ¶6.  For example, Boykin works with third-party contact centers which receive direct correspondence form Dexcom customers.  *Id.* These contact centers are located in Barcelona, Philippines, Lithuania, and in the United States.  *Id.*  Boykin manages a team that handles customer communication which provides customer metrics to Boykin such as answer rates, hold time, handle time, and operational responsiveness.

130494-00000002/5451095.2                                    CASE NO 3:21-CV-01677-H-LL

*Id.* Boykin utilizes this data from Dexcom customers to improve operational efficiency so that customers remain satisfied with Dexcom's products and service. Donlon Decl. at ¶6. Dexcom specifically hired Boykin to oversee these functions and he is the only Dexcom employee currently assigned to overseeing these operations. *Id.* Thus, even a temporary cessation of Boykin's work for Dexcom would result in irreparable damage to Dexcom's business operations because there would be significant delay in replacing Boykin, causing decreased customer satisfaction, and potentially decreased operational efficiency. Donlon Decl. at ¶7.

Importantly, the data Boykin receives from his team relates to Dexcom metrics from Dexcom's customers, and there is no information from Medtronic's products that could impact Dexcom's customers' experience. Donlon Decl. at ¶8. This is to say what knowledge Boykin may remember in his head about Medtronic's products provides no advantage to Dexcom while Boykin performs his job. *Id.* Boykin is not a researcher, engineer, designer, or product development employee at Dexcom. Donlon Decl. at ¶9. Boykin's exclusive role is to manage customer communication to improve Dexcom's operational efficiency. *Id.*

In light of Medtronic's aggressive efforts to enforce its unlawful restrictive covenants against Boykin, including a demand for immediate preliminary injunctive relief, and the substantial and immediate harm that both Boykin and Dexcom will suffer unless the Court preserves the status quo (*i.e.*, declares that Boykin may continue to work for Dexcom in California), Plaintiffs are forced to seek immediate relief from this Court. Plaintiffs filed their Complaint in this action seeking a declaratory judgment that Medtronic's restrictive covenants are void and unenforceable as to Boykin on September 24, 2021, and now respectfully request a temporary restraining order precluding Medtronic from enforcing the facially void and unlawful restrictive covenants in Boykin's Employee Agreement in California in order to prevent Boykin from working for Dexcom in California. Plaintiffs also intend to

move for a preliminary injunction and to have their request for a preliminary injunction heard at the earliest opportunity.

Plaintiffs provided written notice to Medtronic of their intention to apply for a temporary restraining order on September 28, 2021.  Barnes Decl. at ¶12 & Ex. 10.

## III.   ARGUMENT

Rule 65(b) of the Federal Rules of Civil Procedure authorizes the Court to issue a temporary restraining order ("TRO") without notice to the nonmoving party to preserve the status quo until the Court can rule on a motion for a preliminary injunction.  The standard for issuing a TRO is the same as the standard for issuing a preliminary injunction when, as here, the moving party has provided notice of TRO application to the nonmoving party.  *Chen v. PMC Bancorp*, 2010 WL 596421 at *3 (S.D. Cal. 2010).  Thus, in evaluating Plaintiffs' request for a TRO, the Court should consider: (1) whether Plaintiffs are likely to succeed on the merits of their claims; (2) whether Plaintiffs are likely to suffer irreparable harm in the absence of preliminary relief; (3) whether the balance of equities tip in Plaintiffs' favor; and (4) whether the requested TRO is in the public interest.  *American Trucking Assns., Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009); *Moncrief v. Washington Mutual, F.A*., 2010 WL 1407241 at * 1 (S.D. Cal. 2010).

Plaintiffs seek a TRO preserving the status quo pending an opportunity for Plaintiffs to file, and the Court to rule on, a motion for preliminary injunction precluding Medtronic from enforcing the facially void and unlawful restrictive covenants in Boykin's Employee Agreement that, in effect, prevent Boykin from working for Dexcom in California.  All four considerations decidedly weigh in favor of granting Plaintiffs' requested TRO.

### A.   Plaintiffs Demonstrated a Likelihood of Success on the Merits.

Plaintiffs' Complaint contains three claims for relief: (1) a claim for declaratory relief pursuant to California Code of Civil Procedure section 1060; (2) a claim for

declarative relief pursuant to 28 U.S.C. § 2201; and (3) a claim for unfair competition in violation of California Business and Professions Code section 17200.  As a matter of law and the indisputable facts set forth above, Plaintiffs will prevail on all three claims.

### 1.      Plaintiffs Will Prevail on their Claims for Declaratory Relief.

In their claims for declaratory relief, Plaintiffs seek a declaration that California law governs the enforceability of the post-employment Non-Compete and Non-Solicitation restrictive covenants in Boykin's Employee Agreement with Medtronic, and that both provisions are void and unenforceable under California law.  Compl., ¶¶ 36-52.  A plaintiff who is faced with a lawsuit or the reasonable apprehension of a lawsuit under an unlawful contractual provision has standing to seek a declaratory judgment that the provision is void and unenforceable.  *Rhoades v. Avon Prods., Inc.*, 504 F.3d 1151, 1157–58 & fn. 4 (9th Cir. 2007); *see also Cat Tech LLC v. Tubemaster, Inc.*, 528 F.3d 871, 878 (Fed. Cir. 2008) (purpose of declaratory judgment is to provide relief to those who would otherwise be subject to "Damoclean threat with a sheathed sword").  Explicit threats of litigation are not necessary to establish standing to seek declaratory relief.  *Rhoades,* 504 F. 3d at 1157-58.

Medtronic already sued Plaintiffs for alleged breach and inducing a breach of the Non-Compete provision in Boykin's employee agreement, and is actively litigating that claim, forcing Plaintiffs to incur the attendant burdens, and going so far as obtaining a TRO in the Minnesota action precluding Boykin from working for Dexcom.  As to the Non-Solicitation provision, in light of Medtronic's unequivocally expressed intention to treat Boykin's mere presence at Dexcom as an inevitable contractual and legal violation and to monitor and target Dexcom and Boykin's every move, there is little doubt that, in the event that another Medtronic employee ever joins Dexcom in California, Medtronic will blame the loss of the employee on some alleged solicitation by Boykin within the one-year duration of the Non-Solicitation provision.

Faced with both actual litigation and a real and reasonable apprehension of litigation, Boykin and Dexcom have standing to seek declaratory relief that the two restrictive covenants in Boykin's Employee Agreement are unenforceable.

Irrespective of the Minnesota choice-of-law provision in Boykin's Employee Agreement and the fact that Boykin worked for Medtronic in Texas, California law governs the enforceability of the restrictive covenants as to Boykin because there is a fundamental conflict between the restrictive covenants and fundamental and long-standing California law and public policy. Post-employment non-compete agreements have been unequivocally unlawful and against public policy in California since 1872. Specifically, California Business and Professions Code section 16600 provides that "[e]very contract by which anyone is restrained from engaging in a lawful profession, trade or business of any kind is to that extent void," and California's robust public policy favoring competition and employee mobility guarantees Boykin the right to work in California.

Section 16600 represents California's "settled legislative policy in favor of open competition and employee mobility." *Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 946 (2008). "The interests of the employee in his own mobility and betterment are deemed paramount to the competitive business interests of the employers." *Diodes v. Franzen*, 260 Cal. App. 2d 244, 255 (1968). Out-of-state employers are expected to know and comply with California's fundamental public policy with respect to California employees and residents. As one court eloquently admonished, "[i]t is not too much" to expect that a multi-state employer operating in California comply with the prohibitions of Section 16600 and recognize the limitations that Section 16600 imposes on their ability to enforce restrictive covenants against California residents. *See Latona v. Aetna U.S. Healthcare Inc.*, 82 F. Supp. 2d 1089 (C.D. Cal. 1999).

When a California employee is a signatory to a non-compete agreement, California courts have held that the state of California has a materially greater interest

in the application of its law because of its long-standing, strong public policy against any restraint on a California employee's mobility.  *See Nedlloyd Lines B.V. v. Superior Court*, 3 Cal.4th 459, 465–66 (1992); *Application Group, Inc. v. Hunter Group, Inc.*, 61 Cal. App. 4th 881, 900 (1998); *Scott v. Snelling and Snelling, Inc.*, 732 F. Supp. 1034, 1041 (N.D. Cal. 1990).  Thus, as a California resident and California-based employee of Dexcom, Boykin is entitled to the protections of Section 16600.

There can be no dispute that the Non-Compete provision in Boykin's Employee Agreement is void and unenforceable under California law, which, as discussed above, unequivocally prohibits non-compete agreements of any kind, irrespective of breadth, scope or duration.  *See Edwards,* 44 Cal. 4th at 955 (rejecting "narrow restraint" exception to Section 16600, and stating, "Non-competition agreements are invalid under Section 16600 in California even if narrowly drawn").  California jurisprudence also has rejected the theory that an employee may be barred from competing because allowing the employee to compete would "inevitably" result in the employee disclosing his former employer's confidential information as a *de facto* non-compete that would permanently bar an employee from practicing his chosen profession.  *See Schlage Lock Co. v. Whyte*, 101 Cal. App. 4th 1443, 1446-47 (2002) (rejecting "inevitable disclosure" theory as "after-the-fact covenant not to compete restricting employee mobility").

Indeed, Medtronic does not dispute that its Non-Compete provision is unenforceable under California law; instead, it claims that Minnesota law governs the enforceability of the provision, a claim that is entirely without merit for the reasons discussed above.  Simply put, even assuming that the Non-Compete provision is valid under Minnesota law, application of Minnesota law to prevent a California employee and resident from practicing his chosen profession in California would violate every tenet of long-standing California jurisprudence and public policy.  Further, Plaintiffs are not seeking to enjoin Medtronic from seeking whatever remedies are available to

it in Minnesota.  Rather, Plaintiffs are seeking an affirmative order from this Court that Boykin, as a California resident, is free to work in California for Dexcom.  Indeed, there is no prohibition against parallel proceedings on similar issues when one state has a greater interest in protecting its public policy.  *See Advanced Bionics Corp. v. Medtronic, Inc.*, 29 Cal. 4th 697, 708 (2002).

Furthermore, the Non-Solicitation provision in Boykin's Employee Agreement is similarly unenforceable under California law.  In its November 1, 2018 published and precedential decision, the California Court of Appeal in *AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc*., 28 Cal. App. 5th 923 (2018) affirmed the trial court's finding that AMN's post-employment non-solicitation of employees contractual restraint was void and unenforceable under Section 16600.  The Court of Appeal held that previous decisions upholding non-solicitation of employees provisions on the theory that such provisions impose only a narrow restraint on competition conflict with the California Supreme Court's rejection in *Edwards v. Arthur Anderson, supra*, of the "narrow restraint" doctrine. *Id.* at 938 ("use of a reasonableness standard in analyzing the nonsolicitation clause there at issue thus appears to conflict with *Edwards's* interpretation of section 16600, which, under the plain language of the statute, prevents a former employer from restraining a former employee from engaging in his or her 'lawful profession, trade, or business of any kind'").  The Court of Appeal observed that "[o]ur conclusion is further buttressed by the *Edwards* court's refusal to adopt the 'limited' or 'narrow-restraint' exception to section 16600." *Id.*; *see also Barker v. Insight Global, LLC*, 2019 WL 176260 at *3 (N.D. Cal. 2019) ("the Court is convinced by the reasoning in *AMN* that California law is properly interpreted post-*Edwards* to invalidate employee nonsolicitation provisions"); *WeRide Corp. v. Huang*, 379 F. Supp. 3d 834, 852 (N.D. Cal. 2019) (same).

In summary, Plaintiffs have standing to request a judicial declaration regarding the enforceability of Medtronic's restrictive covenants as to Boykin, California law

governs the inquiry and, under California law and long-standing public policy, the provisions are void and unenforceable. Thus, Plaintiffs will prevail on their claims for declaratory relief.

## 2. Plaintiffs Will Prevail on their Claim for Unfair Competition.

Under well-established California law, the inclusion of unlawful restrictive covenants in the employment agreement of a California employee and threats and efforts to enforce such provisions against California residents are unfair and unlawful business practices. *Dowell v. Biosense Webster, Inc.,* 179 Cal. App. 4th 564, 575 (2009); *Application Group, Inc. v. Hunter Group, Inc*., 61 Cal. App. 4th 881, 906-08 (1998); *Couch v. Morgan Stanley*, 2015 WL 4716297 at *20-21 (E.D. Cal. 2015). The mere presence of an unlawful restrictive covenant in an employment contract has an undesirable deterrent effect on employees who do not know their rights under California law, are unlikely to consult with an attorney regarding enforceability of the provision, and would therefore comply with the terms of the unlawful provision. *D'Sa v. Playhut, Inc*., 85 Cal. App. 4th 927, 934-35 (2001). Thus, an employee subject to an unlawful non-compete provision need not even establish that the employer attempted to enforce the provision; the employee's injury and the employer's liability stems from the mere inclusion of an unlawful anti-competitive provision that acts as a deterrent to competition and employee mobility.

In this case, Medtronic not only included unlawful restrictive covenants in Boykin's Employee Agreement (in that those provisions contained no geographic limitations and therefore purported to preclude Boykin from practicing his chosen profession in *any state*, including states like California where such a restriction is patently unlawful), but also repeatedly threatened to enforce the unlawful provisions, and eventually **_sued_** Boykin and his new employer in Minnesota for allegedly violating and inducing the violation of the Non-Compete provision. Because Plaintiffs have incurred, and continue to incur, the burden and expense of defending against

Medtronic's meritless lawsuit, Plaintiffs have suffered the requisite injury-in-fact to seek relief from Medtronic's unfair and unlawful business practices under California Business and Professions Code section 17200. *See Robinson v. U–Haul Co. of Cal.*, 4 Cal. App. 5th 304, 318 (2016) ("We agree with Robinson that he has standing in this action [under Section 17200] because he was sued by UHC in *Robinson I* to enforce the covenant not to compete and incurred attorney's fees and costs as a result"); *Lakeland Tours, LLC v. Bauman*, 2014 WL 12570971 at *4 (S.D. Cal. 2014) ("Bauman has adequately alleged an injury to himself because he alleges that Worldstrides' uncompetitive behavior (which presumably includes suing him to enforce an allegedly illegal contract) is causing Bauman ongoing harm in his ability to work in his profession"). Thus, Plaintiffs are entitled to the equitable relief afforded by Section 17200, including without limitation injunctive relief precluding Medtronic from further unlawful attempts to enforce its restrictive covenants against California employees and residents.

**B.      Plaintiffs are Likely to Suffer Irreparable Harm in the Absence of a TRO.**

As discussed above, Medtronic is not only seeking to enforce a Non-Compete provision that would preclude Boykin, for two years, from practicing his chosen profession anywhere in the world (including at Dexcom in California), but also obtained a TRO and has indicated its intent to seek preliminary injunctive relief preventing Boykin from working immediately, and for the duration of this legal dispute. Both Boykin and Dexcom will suffer irreparable harm unless the Court issues a TRO preserving the status quo pending an opportunity to rule on a motion for preliminary injunction, *i.e.*, declaring that Medtronic cannot use its unlawful restrictive covenants to bar Boykin from working for Dexcom in California. Simply put, Boykin cannot be without work and Dexcom cannot be without Boykin without substantial and irreparable harm to both. Boykin is the primary wage earner for his family.

Boykin's spouse has diabetes and other health issues, significantly hindering her from working because of her existing medical conditions.  And Dexcom is relying on Boykin's specialized knowledge and expertise to perform functions that are essential to Dexcom's day-to-day operations.

Courts have recognized that the inability to work, and attendant financial hardships, resulting from threatened enforcement of an unlawful non-compete provision satisfy the irreparable harm element of an application for preliminary injunction or TRO.  *See, e.g., Philo v. Giftano LLC*, 2013 WL 12097545 at *6 (S.D. Cal. 2013) (granting TRO application and noting that "[o]n the issue of irreparable harm, Plaintiff will suffer the loss of wages and the ability to meet his family's needs"); *Karp v. Avella of Deer Valley Inc*., 2013 WL 5435212 at *3 (D. Az. 2013) ("[The Court finds that Plaintiff has shown a likelihood of irreparable harm if application of the 30–month non-solicitation provision is not enjoined.  Plaintiff has presented evidence in his verified complaint that he faces financial hardship and possible loss of his home if he is unable to find work soon").  The irreparable harm Dexcom's business operations only compounds the imminent damage and enhances the need for the TRO.

## C.      The Balance of Equities Tip in Plaintiffs' Favor.

In ruling on a request for a TRO or preliminary injunction, the Court "*must* exercise its discretion in favor of the party that is more likely to be injured by that exercise" and the party who "[i]s better able  . . . [t]o absorb the [] consequences of an unfavorable ruling."   6 B. Witkin, California Procedure (5th ed. 2008) *Provisional Remedies*, § 293 at p. 233 (emphasis added); *Puricle, Inc. v. Church & Dwight Co., Inc.*, 568 F. Supp. 2d 1144, 1151-52 (C.D. Cal. 2008).  Here, the interim harm to Medtronic of Boykin being permitted to continue to work is, at most, legally protected competition – a challenge that a self-proclaimed "global leader in medical technology, services, and solutions" should be fully equipped and prepared to handle.  Plaintiffs have provided Medtronic with repeated assurances that neither Boykin nor Dexcom

are in possession of or using any claimed proprietary or confidential information belonging to Medtronic, and, other than citing the alleged similarities between Boykin's job duties at the two companies and relying on the "inevitable disclosure" doctrine categorically rejected by California jurisprudence, Medtronic has proffered no evidence or argument to the contrary.[1]

Plaintiffs, on the other hand, will suffer an acute detrimental impact to personal and familial finances (in the case of Boykin) and the ability to conduct day-to-day business operations (in the case of Dexcom). Between the two, especially in light of the clear probability that Plaintiffs will prevail on their claims, Medtronic should be the party compelled to bear the "burden" of an unfavorable ruling.

### D.    The Requested TRO is in the Public Interest.

Finally, the public interest inquiry weighs in favor of a TRO. *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1139 (9th Cir. 2009). As discussed above, freedom of competition is a fundamental and important public policy, and public interest is served by promoting competition. *See R.M. & G. Products v. R.E.F. Golf Co*., 1994 WL 653531 at *4 (N.D. Ohio 1994) ("Although public interest is served by enforcing a valid patent, public interest is also served by promoting competition."). Dexcom and Boykin provide valuable products and services to diabetes patients, and Medtronic's transparent attempts to stymie competition in this important field through the use of facially unlawful anti-competitive restrictive covenants is harmful not only to Plaintiffs, but also to consumers. The public interest in maintaining a fair and competitive marketplace, employee mobility and the right of talented and experienced individuals to practice their chosen profession are served by granting the requested TRO.

---

[1]Medtronic's inevitable disclosure theory runs afoul of established California case law, exposing Medtronic to Rule 11 sanctions if Medtronic utilizes this theory to oppose Dexcom's application. *Schlage Lock Co. v. Whyte*, 101 Cal.App.4th 1443 (2002); *Globespan Inc. v. O'Neill*, 151 F.Supp.2d 1229 (C.D. Cal. 2001); *Bayer Corp. v. Roche Molecular Sys. Inc.*, 72 F.Supp.2d 1111 (N.D. Cal. 1999).

## IV.   CONCLUSION

Try as it might, Medtronic simply cannot bar a California employee and resident from exercising his fundamental protected right to compete and to pursue his chosen profession.   Medtronic's obstinate disregard of California law and its aggressive efforts to enforce its facially unlawful restrictive covenants against Boykin will cause both Boykin and Dexcom immediate and irreparable harm unless the Court issues a TRO preserving the status quo pending an opportunity to rule on a motion for preliminary injunction.   Plaintiffs respectfully request that the Court grant its application for a TRO.

DATED: September 29, 2021        PROCOPIO, CORY, HARGREAVES &
                                                     SAVITCH LLP


                                                     By:  s/ Brook T. Barnes
                                                          Marie Burke Kenny
                                                          Brook T. Barnes
                                                          Nicholas Kawuka
                                                          Attorneys for Plaintiffs Dexcom, Inc.
                                                          and Charles Boykin