Marie Burke Kenny (Bar No. 183640)
E-mail: marie.kenny@procopio.com
Brook T. Barnes (Bar No. 276667)
E-mail: brook.barnes@procopio.com
Nicholas Kawuka (Bar No. 297579)
E-mail: nicholas.kawuka@procopio.com
PROCOPIO, CORY, HARGREAVES &
  SAVITCH LLP
525 B Street, Suite 2200
San Diego, CA 92101
Telephone: 619.238.1900
Facsimile: 619.235.0398

Attorneys for Plaintiff Charles Boykin

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| DEXCOM, INC. and CHARLES BOYKIN, | Case No. 3:21-cv-01677-H-LL |
|---|---|
| Plaintiffs, | **DECLARATION OF CHARLES BOYKIN IN SUPPORT OF PLAINTIFF CHARLES BOYKIN'S *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER FOR INJUNCTIVE RELIEF** |
| v. | |
| MEDTRONIC, INC., | |
| Defendant. | |
| | Date:  TBD<br>Time:  TBD<br>Dept:  15A<br>Judge: Hon. Marilyn L. Huff |

## **DECLARATION OF CHARLES BOYKIN**

I, Charles Boykin, declare as follows:

1. I am the Senior Director Global Technical Support at Dexcom, Inc.

2. I have personal knowledge of the facts set forth below, with the exception of those matters stated on information and belief, and as to those matters, I believe them to be true, and if called as a witness, I could and would competently testify thereto.

3.   I am a seasoned operations manager with over 30 years of experience in all strategic and tactical aspects of change management and customer service for projects, initiatives and organizational transformation.

4.   I started working for Medtronic in 2014. Between December 29, 2014 until my employment was terminated effective January 2, 2021, I was living and working for Medtronic in San Antonio, Texas. During this time, I worked for Medtronic as Senior Customer Service Manager in its diabetes division, which is based in Northridge, California. While I worked for Medtronic, prior to the COVID pandemic, I would travel to Northridge quarterly and typically work out of its Northridge, California facility for a week each quarter. The only time I recall performing work for Medtronic in Minnesota is when I interviewed for a position in another division in Minnesota and I continued to perform my daily operations while in Minnesota.

5.   On or about March 4, 2020, Medtronic required me to sign a new at-will employment agreement, entitled "Employee Agreement" as a condition to receive my increased salary and "stay bonus" instead of pursuing a new opportunity in Medtronic's cardiovascular division. Unassisted by counsel, I signed the agreement. Attached as **Exhibit 11** is a true and correct copy of the Employee Agreement.

6.   My supervisor Michael Cox presented the Employment Agreement to me in a conversation in my office in Texas that lasted approximately two minutes. Cox informed me that I needed to sign the Employment Agreement in order to receive my stay bonus. He did not mention that the agreement included a two-year non-compete. I relied on Cox's representation, and did not closely review the Employment Agreement before immediately signing it. I understood the agreement was a standard confidentiality agreement, and was not aware the agreement included a two-year non-compete.

7. The Employee Agreement contained broad provisions titled "Restrictions on Competition" (the "Non-Complete Clause") & "Prohibition on Solicitation of MEDTRONIC Employees." (the "Non-Solicitation" clause) that purport to impose on Boykin a two-year post-employment non-compete (with no geographic limitations) and a one-year post-employment prohibition on soliciting Medtronic's employees. The Employee Agreement also required me to notify Medtronic immediately if I accepted an offer of employment from any new employer.

8. When Medtronic representatives Michael Cox and Rebecca Garza notified me of Medtronic's decision to terminate my employment in late 2020, I was on leave recovering from a back injury. Cox and Garza told me that Medtronic would not seek reimbursement of the stay bonus it had paid me or any disputed expense reimbursements. Although I disagreed with Medtronic's decision, I did not challenge it at the time since I was already planning on moving on anyway. In addition to my general dissatisfaction with Medtronic, I had heard rumors that Medtronic was going to do a mass layoff and that my team would be included in the layoff. No one from Medtronic informed me that I had signed a non-compete or reminded me about any obligations in the Employment Agreement.

9. In or around February 2021, after Medtronic terminated my employment, I started working at Dexcom as its Senior Director Global Technical Support. I have worked and continue to work, for Dexcom in San Diego, California. Attached as **Exhibit 12** is a true and correct copy of Dexcom's Offer Letter to me, dated February 2, 2021. When I started working for Dexcom, I was still living in Texas, so I began my work remotely. I sold my family home in Texas and relocated to California. I have not and will not disclose any of Medtronic's confidential information to anyone at Dexcom. My job responsibilities at Dexcom do not require me to rely upon any Medtronic information, confidential or otherwise.

3

10. After Medtronic learned of my employment at Dexcom, it launched a campaign of threats and false accusations against me and sent numerous letters demanding assurances that I was complying with and would comply with the Employee Agreement. I responded to Medtronic and provided the assurances Medtronic sought. Attached as **Exhibit 13** is a true and correct copy of my April 22, 2021 letter to Medtronic.

11. I am living in San Diego County in California. I expect to maintain a residence in California throughout my employment with Dexcom and I currently have a California mailing address. I received my California driver's license and intend to reside in San Diego. I sold my residential property in the State of Texas.

12. I am the primary wage earner for my family. Both my spouse and one of our adult children have Type I diabetes. My spouse has severe diabetes and autoimmune issues which significantly hinder her from working because of these existing medical conditions. If I am left without an income during the pendency of either this action or the Minnesota action (or even pending an opportunity for the Court in this action to rule on a motion for preliminary injunction), me and my family will suffer significant and irreparable financial hardship after spending significant financial resources moving to and establishing our family in California. Additionally, my family needs the medical insurance coverage provided by Dexcom to continue the medical care for my family.

13. I chose to work for Dexcom because of the personal experiences and challenges my family has faced living with diabetes, and Medtronic is seeking to preclude me from working for any company with similar diabetes products. The net result is that I am not able to pursue a meaningful career in this industry unless I work for Medtronic, who decided to terminate my employment. This restriction on my employment at Dexcom unfairly precludes me form pursuing my passion in this industry.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 28th day of September 2021, at San Diego, California.

_____
Charles Boykin