Marie Burke Kenny (Bar No. 183640)
E-mail:       marie.kenny@procopio.com
Brook T. Barnes (Bar No. 276667)
E-mail:       brook.barnes@procopio.com
Nicholas Kawuka (Bar No. 297579)
E-mail:       nicholas.kawuka@procopio.com
PROCOPIO, CORY, HARGREAVES &
     SAVITCH LLP
525 B Street, Suite 2200
San Diego, CA 92101
Telephone: 619.238.1900
Facsimile: 619.235.0398

Attorneys for Plaintiff Charles Boykin

## UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEXCOM, INC.  and CHARLES BOYKIN,<br><br>          Plaintiffs,<br><br>v.<br><br>MEDTRONIC, INC.,<br><br>          Defendant. | Case No. _21-cv-1677-CAB-LL<br><br>**PLAINTIFFS DEXCOM, INC. AND CHARLES BOYKIN'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS OPPOSITION TO DEFENDANT MEDTRONIC, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS**<br><br>**PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT**<br><br>Date:      November 29, 2021<br>Time:      TBD<br>Dept:      15A<br>Judge:     Hon. Cathy Ann Bencivengo |

21-cv-1677-CAB-LL
130494-00000002/5512306.7

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ............................................................................................... 1

II. RELEVANT FACTUAL BACKGROUND ........................................................ 3

III. ARGUMENT .................................................................................................. 4

    A.    The Court Should Disregard the Forum Selection Clause Because California, Not Minnesota, Is the Proper Forum for This Dispute ......... 4

        1.    Dexcom Cannot Be Bound to the Forum Selection Clause Because it is Neither a Beneficiary Nor an Entity Closely Related to the Contractual Relationship ....................................... 5

        2.    The Court Should Disregard the Forum Selection Clause with Regard to Boykin, Because Enforcing It Would Contravene California's Strong Public Policy .................................... 5

        3.    The Court Should Disregard the Forum Selection Clause Because It was a Product of Fraud or Overreaching .................... 8

        4.    Even If the Forum Selection Clause Were Enforceable Against Boykin, Federal Policy Concerns Deem it Unenforceable .............................................................................. 9

        5.    Medtronic Does Not Identify an Adequate Alternative Forum and the Private and Public Factors Support this Court Retaining Jurisdiction Over the Matter ....................................... 10

    B.    None of Medtronic's Arguments Divest Jurisdiction ........................... 12

        1.    Brillhart Abstention Does Not Apply Because Plaintiffs Seek More than Declaratory Relief ......................................... 12

        2.    Colorado River Doctrine Does Not Apply to the UCL Claim ... 13

    C.    The UCL Claim Survives Because It is Not Based On Protected Pre-Litigation or Litigation Activities. ...................................................... 16

        1.    The UCL Claim Survives Under the *Noerr-Pennington* Doctrine and the Litigation Privilege Because It Is Not Based on Protected Activity .................................................. 16

        2.    The UCL Claim Survives Because It is Not Based On Extraterritorial Conduct by Medtronic. ..................................... 17

        3.    The UCL Claim Survives Under the Anti-SLAPP Statute Because It is Not based on Protected Activity and Plaintiffs Have a Reasonable Probability of Prevailing on the Claim. ....... 17

            a.    The Challenged Conduct Is Not Protected Under 425.16 ...................................................................... 18

i

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

        b.     Plaintiffs Have a Reasonable Probability of Prevailing....18

D.    The Court Should Not Dismiss the Complaint Under Rule 12(b)(7) Because MiniMed is Neither a Necessary Nor Indispensable Party .....20

    1.    MiniMed Is Not a Necessary Party................................................20

    2.    MiniMed Is Not an Indispensable Party ......................................23

IV. CONCLUSION. ...................................................................................25

ii

130494-00000002/5512306.7

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Ally Bank v. Castle*
  No. 11-CV-896 YGR, 2012 WL 3627631 (N.D. Cal. Aug. 20, 2012) ............. 14

*Am. Bankers Mgmt. Co., Inc. v. Heryford*
  885 F.3d 629 (9th Cir. 2018) ................................................................. 13

*Argueta v. Banco Mexicano, S.A.*
  87 F.3d 320 (9th Cir. 1996) .................................................................... 9

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*
  571 U.S. 49 (2013) ................................................................................ 10

*Bakia v. Los Angeles Cty. of State of Cal.*
  687 F.2d 299 (9th Cir. 1982) ................................................................. 20

*Bos. Telecommunications Grp., Inc. v. Wood*
  588 F.3d 1201 (9th Cir. 2009) ............................................................... 11

*Brillhart v. Excess Ins. Co. of America*
  316 U.S. 491 (1942) ...................................................................... 2, 12, 13

*Broom v. Interact Commc'ns, Inc.*
  No. 20-CV-2182 W (AGS), 2021 WL 778619, at *2 (S.D. Cal. Mar. 1, 2021) . 12

*Cachil Dehe Band of Wintun Indians of the Colusa Indian Cmty. v. California*
  547 F.3d 962 (9th Cir. 2008) ................................................................. 23

*Campbell v. Bd. of Trustees of Leland Stanford Junior Univ.*
  817 F.2d 499 (9th Cir. 1987) ................................................................... 6

*Carijano v. Occidental Petroleum Corp.*
  643 F.3d 1216 (9th Cir. 2011) ............................................................... 11

*Chamberlain v. Allstate Ins. Co.*
  931 F.2d 1361 (9th Cir. 1991) ............................................................... 13

*Colorado River Water Cons. Dist. v. US*
  424 U.S. 800 (1976) ................................................................. 2, 13, 14, 15

iii

*Couch v. Morgan Stanley*
   2015 WL 4716297 (E.D. Cal. 2015) .................................................. 13

*Davis v. Elec. Arts Inc.*
   775 F.3d 1172 (9th Cir. 2015) .......................................................... 18

*Dawavendewa v. Salt River Project Agr. Imp. & Power Dist.*
   276 F.3d 1150 (9th Cir. 2002) .......................................................... 22

*DeFeo v. Proctor & Gamble Co.*
   831 F. Supp. 776 (N.D. Cal. 1993) ............................................. 12, 13

*Dole Food Co. v. Watts*
   303 F.3d 1104 (9th Cir. 2002) .......................................................... 11

*E.E.O.C. v. Peabody W. Coal Co.*
   610 F.3d 1070 (9th Cir. 2010) .......................................................... 24

*Est. of Mendez v. City of Ceres*
   390 F. Supp. 3d 1189 (E.D. Cal. 2019) ........................................... 24

*Forti v. Suarez-Mason*
   672 F. Supp. 1531 (N.D. Cal. 1987) ................................................ 22

*Frigate Ltd. v. Damia*
   No. C 06-04734 CRB, 2007 WL 127996 (N.D. Cal. Jan. 12, 2007) ................ 10

*Gemini Techs., Inc. v. Smith & Wesson Corp.*
   931 F.3d 911 (9th Cir. 2019) .............................................................. 6

*Gilbertson v. Albright*
   381 F.3d 965 (9th Cir. 2004) (*en banc*) ......................................... 15

*Golden v. California Emergency Physicians Med. Grp.*
   896 F.3d 1018 (9th Cir. 2018) .......................................................... 19

*Google, Inc. v. Microsoft Corp.*
   415 F. Supp. 2d 1018 (N.D. Cal. 2005) ........................................... 13

*Hendricks v. StarKist Co.*
   No. 13-CV-729 YGR, 2014 WL 1245880 (N.D. Cal. Mar. 25, 2014) ............ 15

*Holder v. Holder*
   305 F.3d 854 (9th Cir.2002) ....................................................... 14, 15

iv

*Holland Am. Line, Inc. v. N. Am., Inc.*
   485 F.3d 450 (9th Cir. 2007) ............................................................... 5

*In re Allustiarte*
   786 F.2d 910 (9th Cir. 1986) .............................................................. 24

*In re Magnacom Wireless, LLC*
   503 F.3d 984 (9th Cir.2007) ................................................................. 7

*In re TFT-LCD (Flat Panel) Antitrust Litig.*
   No. C 13-3349 SI, 2014 WL 1477748 (N.D. Cal. Apr. 14, 2014) .................... 10

*In re Toyota Motor Corp.*
   785 F. Supp. 2d 883 (C.D. Cal. 2011) ................................................... 24

*Intel Corp. v. Advanced Micro Devices, Inc.*
   12 F.3d 908 (9th Cir. 1993) ................................................................ 15

*Jamul Action Comm. v. Simermeyer*
   974 F.3d 984 (9th Cir. 2020) .............................................................. 20

*Kiland v. Bos. Sci. Corp.*
   No. C 10-4105 SBA, 2011 WL 1261130, at *4 (N.D. Cal. Apr. 1, 2011) ........... 7

*Lomayaktewa v. Hathaway*
   520 F.2d 1324 (9th Cir. 1975) ....................................................... 22, 24

*Lueck v. Sundstrand Corp.*
   236 F.3d 1137 (9th Cir. 2001) ............................................................ 11

*M/S Bremen v. Zapata Off-Shore Co.*
   407 U.S. 1 (1972) ............................................................................... 6

*Makah Indian Tribe v. Verity*
   910 F.2d 555 (9th Cir. 1990) ........................................................ 20, 21

*Manetti-Farrow, Inc. v. Gucci Am., Inc.*
   858 F.2d 509 (9th Cir. 1988) ............................................................... 5

*Martinez-Serrano v. INS*
   94 F.3d 1256 (9th Cir. 1996) ............................................................... 5

*McLaughlin v. Int'l Ass'n of Machinists*
   847 F.2d 620 (9th Cir. 1988) ............................................................. 21

*Mindys Cosms., Inc. v. Dakar*
  611 F.3d 590 (9th Cir. 2010) ............................................................... 19

*Monastiero v. appMobi, Inc.*
  15 F. Supp. 3d 956 (N.D. Cal. 2014) .................................................... 4

*Murphy v. Schneider Nat'l, Inc.*
  362 F.3d 1133 (9th Cir. 2004) ......................................................... 4, 9

*N.D. ex rel. parents acting as guardians ad litem v. Hawaii Dep't of Educ.*, 600 F.3d
  1104, 1109 (9th Cir. 2010) ................................................................ 21

*Nguyen v. Barnes & Noble, Inc.*
  763 F.3d 1171 (9th Cir. 2014) .............................................................. 5

*Petersen v. Boeing Co.*
  715 F.3d 276 (9th Cir. 2013) ............................................................... 9

*Regal Beloit Am., Inc. v. Power Right Indus., LLC*
  No. EDCV141008PAPLAX, 2014 WL 12603114 (C.D. Cal. Oct. 6, 2014) ..... 12

*Richards v. Lloyd's of London*
  135 F.3d 1289 (9th Cir. 1998) .............................................................. 9

*Rickards v. Canine Eye Registration Found.*
  783 F.2d 1329 (9th Cir. 1986) ............................................................ 16

*Rouse v. L. Offs. of Rory Clark*
  465 F. Supp. 2d 1031 (S.D. Cal. 2006) ............................................... 18

*Scott v. Snelling & Snelling, Inc.*
  732 F. Supp. 1034 (N.D. Cal. 1990) ..................................................... 7

*Seneca Ins. Co., Inc. v. Strange Land, Inc.*
  862 F.3d 835 (9th Cir. 2017) ............................................................. 13

*Thomas v. Colvin*
  No. CV 15-01451-RAO, 2016 WL 1733418 (C.D. Cal. Apr. 29, 2016) ............. 5

*United States v. Romm*
  455 F.3d 990 (9th Cir. 2006) ............................................................. 10

*Vasquez v. Rackauckas*
  734 F.3d 1025 (9th Cir. 2013) ........................................................... 15

130494-00000002/5512306.7

1

**STATE CASES**

2

*Aghaji v. Bank of Am., N.A.*
3
    247 Cal. App. 4th 1110 (2016) ....................................................................... 17

4

*Application Grp., Inc. v. Hunter Grp., Inc.*
5
    61 Cal. App. 4th 881 (1998) ..................................................................... 6, 7, 8

6

*Edwards v. Arthur Andersen LLP*
7
    44 Cal. 4th 937, 189 P.3d 285 (2008) ........................................................... 19

8

*Edwards v. Centex Real Est. Corp.*
9
    53 Cal. App. 4th 15 (1997) ............................................................................. 16

10

*Fillpoint, LLC v. Maas*
    208 Cal. App. 4th 1170 (2012) ...................................................................... 19

11

*Hill Med. Corp. v. Wycoff*
12
    86 Cal. App. 4th 895 (2001) ............................................................................. 6

13

*Ixchel Pharma, LLC v. Biogen, Inc.*
14
    9 Cal. 5th 1130, 470 P.3d 571 (2020) ........................................................... 20

15

*L.A. Taxi Coop., Inc. v. The Indep. Taxi Owners Assn. of Los Angeles*
16
    239 Cal. App. 4th 918 (2015) ........................................................................ 18

17

*Linder v. Thrifty Oil Co.*
18
    23 Cal.4th 429 (2000) ..................................................................................... 19

19

*Medtronic, Inc. v. Advanced Bionics Corp.*
20
    29 Cal. 4th 697 (2002) ................................................................................... 25

21

*Medtronic, Inc. v. Advanced Bionics Corp.*
    630 N.W.2d 438 (Minn. Ct. App. 2001) .................................................. 6, 23

22

*MegaFon PJSC v. Hewlett Packard Enter. Co.*
23
    No. 18-CV-06463-NC, 2019 WL 1130481 (N.D. Cal. Mar. 12, 2019) ............. 25

24

*Nedlloyd Lines B.V. v. Superior Ct.*
25
    3 Cal. 4th 459, 834 P.2d 1148 (1992) ............................................................. 7

26

*Simpson Strong-Tie Co., Inc. v. Gore*
27
    49 Cal.4th 12 (2010) ...................................................................................... 18

28

130494-00000002/5512306.7

FEDERAL STATUTES, REGULATIONS, AND RULES

28 U.S.C.

§ 1391 (a)(1) ................................................................................. 4
§ 1391 (a)(2) ................................................................................. 4
§ 2201 ........................................................................................ 13

Federal Rules of Civil Procedure

Rule 12(b)(3) ................................................................................. 9
Rule 12(b)(7) .......................................................................... 20, 22
Rule 19 ............................................................................ 20, 22, 23, 25
Rule 19 (a) ......................................................................... 20, 21, 22, 23
Rule 19(a)(1)(A) ......................................................................... 20
Rule 19(a)(1)(B) ......................................................................... 21
Rule 19 (b) ........................................................................... 20, 24

STATE STATUTES, REGULATIONS, AND RULES

Business and Professions Code

§ 16600 ............................................................................... passim
§ 17200 .............................................................................. 4, 19

Civil Code

§ 47(b) ................................................................................. 2, 16
§ 425.16 ................................................................................. 2

Code of Civil Procedure

§ 425.16 ................................................................................ 17
§ 425.16(b) ............................................................................. 18
§ 425.16(b)(1) ......................................................................... 18

Labor Code § 925 ....................................................................... 7, 8

SUSPECTS

section 1404(a) ........................................................................ 10

21-cv-1677-CAB-LL

## I.      INTRODUCTION

No matter how often Medtronic, Inc. ("Medtronic") repeats its mantra, this case is <u>not</u> about misappropriation of confidential information.  Notably, even though it uses the phrase "confidential information" 14 times in its brief, Medtronic does not state that Plaintiffs Dexcom, Inc. ("Dexcom") and Charles Boykin ("Boykin") (collectively "Plaintiffs") misappropriated its confidential information.  Despite the obfuscation, this case is simple: Medtronic's restrictive covenants in its employment agreement with Boykin are unenforceable in California – even if they are enforceable elsewhere.  Plaintiffs simply seek declarations to that effect.  As California citizens, Plaintiffs properly filed suit here.  Medtronic asks this Court to ignore the fundamental rights of Californians to dismiss the Complaint via a myriad of procedural challenges.

Specifically, Medtronic argues this Court should dismiss the matter because a forum selection clause requires litigation in Minnesota, where Medtronic already filed suit.  ("Minnesota State Action").  Dkt. 16-1, p.8.  It further argues the Court should not exercise jurisdiction because "Plaintiffs' claims are entirely duplicative of the claims and issues" in that earlier action.  *Id*.  Medtronic also argues that the unfair competition ("UCL") claim seeks to enjoin extraterritorial pre-litigation and litigation conduct that is immunized from liability under the *Noerr-Pennington* doctrine, California's litigation privilege, and California's anti-SLAPP statute.  *Id*.  Finally, it argues the case should be dismissed because Plaintiffs failed to join MiniMed Distribution Corp., ("MiniMed"), a Medtronic subsidiary.  *Id*.  The Court should reject these arguments and enforce the substantive law of California instead of narrowly tailored procedural challenges with limited applicability to the facts of this case.

<u>First</u>, Dexcom is not a signatory to the contract with the forum selection clause, and Medtronic does not make any argument or submit any facts why it should be bound by the clause.  The clause is also not enforceable against Boykin because it was a result of fraud or overreaching, and because enforcing it would contravene California's public policy against non-compete agreements.  Even assuming the clause was

1

*21-cv-1677-CAB-LL*

enforceable against Boykin, because Dexcom is clearly not bound by it, the Court should not enforce the clause because that would result in duplicative litigation.

Second, the mere fact that Medtronic filed suit days before Dexcom and Boykin does not entitle Medtronic to dismissal in the Ninth Circuit.  Contrary to Medtronic's arguments, the Minnesota State Action is not duplicative of this suit.  Even if it were, this Court cannot decline jurisdiction under *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491 (1942) ("Brillhart") because Plaintiffs seek more than declaratory relief.  The court also cannot dismiss or stay the UCL claim under *Colorado River Water Cons. Dist. v. US*, 424 U.S. 800 (1976) ("Colorado River"), because that would result in piecemeal litigation, and because this suit is not parallel to the Minnesota case.

Third, Medtronic's argument that the UCL cause of action should be dismissed because it is based on activity protected under the *Noerr-Pennington* doctrine and California's litigation privilege under Civil Code section 47, subdivision (b) overlooks the relief that Plaintiffs seek—i.e. Plaintiffs' harm stems from the unenforceable provisions in Boykin's agreement, not Medtronic's litigation.  Specifically, not a single cause of action in the Complaint relies upon protected pre-litigation or litigation statements or conduct.  Rather, it relies on Medtronic's conduct of using and attempting to enforce its unlawful covenants against California residents to stifle competition—the exact act that Business and Professions Code section 16600 prohibits.  Further, the Complaint does not rely on extraterritorial conduct since Medtronic engaged in conduct that caused California residents injury *in California*.  Moreover, the cause of action cannot be stricken under Civil Code section 425.16 because it does not rely on protected conduct.  And even if it did, Plaintiffs have a reasonable probability of prevailing on the merits of the claim because California has zero tolerance and prohibits *all* contracts that restrain employee mobility.

Fourth, Medtronic's conclusory argument that the case should be dismissed because Plaintiffs failed to join a necessary and indispensable party ignores the proper analysis propagated by the Ninth Circuit.  Contrary to what Medtronic argues,

2

MiniMed is not a necessary party because it is not a signatory to the contract Medtronic entered into with Boykin. But even if it were, it is not "indispensable" because, among other reasons, as a downstream subsidiary of Medtronic with 100% identical interests, it would not suffer any prejudice since Medtronic would adequately represent it.

For each of these reasons, the Court should deny Medtronic's motion.

## II. RELEVANT FACTUAL BACKGROUND

Despite working for Medtronic since at least December 2014, Boykin signed the employment agreement at issue ("Employee Agreement") on March 4, 2020. Dkt. 1, ¶12. The agreement contained two provisions: (a) a non-compete provision that barred Boykin from working for any competitor of Medtronic for a period of two years following the end of his employment with Medtronic; and (2) a non-solicitation agreement that also barred Boykin from soliciting anyone to terminate employment with Medtronic for a period of 1 year after Boykin left Medtronic. *Id*., ¶16. Effective January 2, 2021, Medtronic terminated Boykin's employment. *Id*., ¶18.

In February 2021, Boykin started working at Dexcom in California. *Id*., ¶20. Between April 2021 and July 2021, Medtronic wrote to Plaintiffs impugning them of misuse of confidential information and seeking to enforce the unlawful provisions. *Id*., ¶¶21-29. Plaintiffs reassured Medtronic that Boykin had not disclosed and Dexcom had not received or used Medtronic's confidential information. *Id*., ¶30. Plaintiffs clarified that the non-compete and non-solicitation provisions Medtronic sought to enforce were void and unenforceable in California. *Id*., ¶30. Unabashed, Medtronic and MiniMed sued Plaintiffs in the Minnesota State Action for breach of contract alleging that working for Dexcom in California violated the non-compete provision *under Minnesota law*. *Id*. They also accused Dexcom of tortuously interfering with the Employee Agreement between Boykin and Medtronic. *Id*., ¶30. The Minnesota court issued a Temporary Restraining Order, which is under submission and subject to a dissolution. Dkt. 5-2, ¶10.

In an effort to ascertain their rights, on September 24, 2021, Plaintiffs filed this

3

130494-00000002/5512306.7

action asserting causes of action for declaratory relief under federal and state law, and asserting a cause of action for unfair competition under Business and Professions Code section 17200, *et seq.* Dkt. 1. In addition to seeking injunctive relief, Plaintiffs seek declarations that the non-compete and non-solicitation clauses in the Employee Agreement are void and unenforceable *under California law* and public policy. *Id*. In response to the complaint, Medtronic filed the current motion to dismiss. Dkt. 16.

## III. ARGUMENT

### A.     The Court Should Disregard the Forum Selection Clause Because California, Not Minnesota, Is the Proper Forum for This Dispute

This Court is the appropriate venue for this action under 28 U.S.C. section 1391 (a)(1) because Medtronic is subject to personal jurisdiction in this district. The Court is also the proper venue because a substantial part of the events or omissions on which Plaintiffs base their claims occurred in this district. 28 U.S.C. 1391 (a)(2). Notwithstanding, Medtronic moves to dismiss the matter in its entirety based on its claims that Minnesota is the proper forum because of a forum selection clause contained in the Employee Agreement between Medtronic and Boykin.

While forum selection clauses are prima facie valid, a forum selection clause may be unreasonable and unenforceable if: (a) "the inclusion of the clause in the agreement was the product of fraud or overreaching"; (b) "the party wishing to repudiate the clause would effectively be deprived of his day in court were the clause enforced"; or (c) "enforcement would contravene a strong public policy of the forum in which suit is brought." *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1140 (9th Cir. 2004). For employment agreements, federal courts consider the power differentials between the employer and employee, the educational background of the party challenging the clause, their business expertise, as well as the financial ability to bear the costs and inconvenience of litigating the dispute in the selected forum. *Monastiero v. appMobi, Inc.*, 15 F. Supp. 3d 956, 960 (N.D. Cal. 2014); *Murphy*, 362 F.3d at 1140–41. The forum selection clause in the Employee Agreement between

4

*Medtronic and Boykin* should not be enforced for the following five reasons.

### 1. Dexcom Cannot Be Bound to the Forum Selection Clause Because it is Neither a Beneficiary Nor an Entity Closely Related to the Contractual Relationship

Dexcom is not a party to the Employee Agreement with the forum selection clause.[1]  As a non-party, the forum selection clause may only be enforced against Dexcom if (1) Dexcom is a third-party beneficiary[2] or (2) Dexcom is "closely related to the contractual relationship."[3] Neither circumstance applies.  Dexcom is not a third-party beneficiary under the contract and received no benefit from the contract, incidentally or explicitly.  Dexcom is also not closely related to the contractual relationship between Medtronic and Boykin because it is not "part of the larger contractual relationship" between Medtronic and Boykin. *See Holland Am. Line, Inc. v. N. Am., Inc.*, 485 F.3d 450, 456 (9th Cir. 2007).

Yet, Medtronic completely glosses over these facts in arguing generally that the forum selection clause is enforceable.  For this alone, the Court should decline to enforce the forum selection clause.  *Martinez-Serrano v. INS*, 94 F.3d 1256, 1259-60 (9th Cir. 1996) (issues not supported by argument in the opening brief are deemed abandoned); *Thomas v. Colvin*, No. CV 15-01451-RAO, 2016 WL 1733418, at *4, n. 2 (C.D. Cal. Apr. 29, 2016) (same).  Medtronic also ignores that Dexcom challenged jurisdiction in Minnesota.  Because Medtronic does not explain how the forum selection clause applies to Dexcom, a non-party, and yet it seeks to bind Dexcom to that contractual forum selection clause, the Court should end its inquiry here.

### 2. The Court Should Disregard the Forum Selection Clause with Regard to Boykin, Because Enforcing It Would Contravene California's Strong Public Policy

While forum selection clauses are presumptively valid, "[a] contractual choice-

---

[1] Dexcom specifically challenged jurisdiction in the Minnesota action.
[2] *Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1180 (9th Cir. 2014).
[3] *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514, n.5 (9th Cir. 1988)

5

of-forum clause should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972); *Gemini Techs., Inc. v. Smith & Wesson Corp*., 931 F.3d 911, 916 (9th Cir. 2019).

Here, the forum selection clause contravenes California's strong public policy under Business and Professions Code section 16600, to wit: "Except as provided in this chapter, *every contract* by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." Cal. Bus. & Prof. Code § 16600 (emphasis added).  Since 1872, California has held steadfast in its policy that employees must have unencumbered ability to work where they please after leaving their former employment.  *Campbell v. Bd. of Trustees of Leland Stanford Junior Univ*., 817 F.2d 499, 502 (9th Cir. 1987).  Section 16600 encapsulates that policy by rendering "every contract" that purports to restrain a California resident from engaging in their lawful profession, trade, or business void.  Cal. Bus. & Prof. Code § 16600.  Thus, in California, the interests of the employee in free mobility override any competing interests of the former employer particularly where neither the employee nor the new employer committed any unlawful act related to the changed employment. *Application Grp., Inc. v. Hunter Grp., Inc*., 61 Cal. App. 4th 881, 900 (1998).

Minnesota on the other hand does not have any comparable public policy that leans heavily in favor of employee mobility.  While Minnesota courts do not favor noncompetition agreements, they often enforce such covenants to protect business interests such as goodwill, trade secrets, and confidential information.  *Medtronic, Inc. v. Advanced Bionics Corp.,* 630 N.W.2d 438, 454 (Minn. Ct. App. 2001).  California on the other hand steadfastly adheres to its policy against non-compete and non-solicitation agreements.  *Hill Med. Corp. v. Wycoff*, 86 Cal. App. 4th 895, 900-01 (2001).  Because enforcement of the forum selection clause would contravene California's public policy, the Court should reject Medtronic's requests to enforce the clause against the only party Medtronic can claim the clause can be enforced – Boykin.

21-cv-1677-CAB-LL

130494-00000002/5512306.7

Furthermore, Medtronic's attempt to circumvent California's strong public policy by seeking to enforce an unfavorable choice of law provision further militates against enforcing the forum selection clause.   To prevent employers from circumventing Business and Professions Code section 16600 though use of choice of law provisions in employment contracts that avoid California law, California enacted an anti-waiver statute, effective January 1, 2017, that renders voidable, at the employee's choice a contract that requires the employee to adjudicate claims that arise in California or deprives the employee of the substantive protection of California law for any contract entered it or modified after January 1, 2017.  California Labor Code § 925.  And that is exactly the kind of contract Medtronic purports to bind Boykin to.

Notably, while Medtronic does not substantively dispute that California has a materially greater interest in ensuring that its businesses and employees are protected from out-of-state actors' anticompetitive conduct (*Application Grp., Inc. v. Hunter Grp., Inc*., 61 Cal. App. 4th 881, 902 (1998)), Medtronic openly advocates for application of the choice of law provision in favor of Minnesota.  *See* Dkt. 16-1, p. 10, lns. 19-24.  Medtronic also openly advocates that the Court should address the matter without regard to the choice of law provision.  Dkt. 16-1, p. 15 (citing *Kiland v. Bos. Sci. Corp*., No. C 10-4105 SBA, 2011 WL 1261130, at *4 (N.D. Cal. Apr. 1, 2011)).  But the passage Medtronic relies on for this proposition is *dicta* which is not binding.  *See In re Magnacom Wireless, LLC,* 503 F.3d 984, 993-94 (9th Cir.2007) ("In our circuit, statements made in passing, without analysis, are not binding precedent.").  Moreover, that approach (ignoring the choice of law clause) would result in violating California's public policy.  "If California has a materially greater interest than the chosen state, the choice of law shall not be enforced, for the obvious reason that in such circumstance we will decline to enforce a law contrary to this state's fundamental policy."  *Nedlloyd Lines B.V. v. Superior Ct*., 3 Cal. 4th 459, 466, 834 P.2d 1148, 1152 (1992); *Scott v. Snelling & Snelling, Inc*., 732 F. Supp. 1034, 1039 (N.D. Cal. 1990) (same).  Because Medtronic uses the forum selection clause and advocates for a choice

7

*21-cv-1677-CAB-LL*

of law provision that in letter and spirit violates Labor Code section 925 and section 16600, and yet California courts "are not bound to enforce a contractual conflict of law provision" that is contrary to California's policy (*Application Grp.*, 61 Cal. App. 4th at 902), the Court should not enforce the forum selection clause.

### 3.   The Court Should Disregard the Forum Selection Clause Because It was a Product of Fraud or Overreaching

With regard to Boykin, the Complaint contains allegations that Boykin's assent to restrictive covenants was a product of fraud or overreaching. Dkt. 1, ¶12. Plaintiffs also offered evidence to show that Boykin's assent to the terms was obtained through fraud or overreaching. Dkt 5-3, ¶¶5-6; Dkt 13-4, ¶¶16-17:

> "In an approximately two-minute encounter on March 4, 2020, my boss, Michael Cox, walked into my office and told me I needed to sign Medtronic's Employee Agreement in order to receive the $15,000 retention bonus. Cox described the document as a 'standard employment agreement' and did not mention that it contained a non-compete or a Minnesota choice-or-law provision. Relying on Cox's representations, I recall seeing the title 'Employee Agreement' but I did not read the text of the Employee Agreement. I did not consult with legal counsel, and signed it then and there in front of Cox. I believed the Employee Agreement only included standard confidentiality obligations. The only time I recall hearing any discussions of non-compete agreements at Medtronic was in relation to sales representatives." Dkt 13-4, ¶¶16-17.

Notably, Boykin was not able to fully review the Employee Agreement before signing it, and he certainly did not have a chance to share the agreement with an attorney before he signed it. *See id*. Medtronic, intent on tying him to unfair terms including the forum selection clause, rushed him to sign the agreement, advising that it was simply how he was to obtain the "stay bonus."

But the inclusion of the forum selection clause in the Employee Agreement was fundamentally improper and demonstrates Medtronic's fraud and overreaching. Specifically, throughout his employment at Medtronic, Boykin lived and worked in Texas, not Minnesota, with occasional work in California. Dkt. 1, ¶2; Dkt. 13-4, ¶¶10, 14. Medtronic, his employer, knew this fact. But yet, calculatedly intent on binding

8

him to a forum where he could not easily travel to litigate a dispute initiated by a well-funded multinational corporation, Medtronic conveniently omitted to explain to Boykin this critical term. Instead, intent on making sure he glossed over the terms, Medtronic demanded in a two-minute meeting on March 4, 2020, that he sign the "standard employment agreement" as a precondition to getting his "stay bonus." Dkt. 13-4, ¶16. In light of this showing, the Court cannot enforce the forum selection clause because it is fundamentally unfair. *Richards v. Lloyd's of London*, 135 F.3d 1289, 1297 (9th Cir. 1998) (terms unenforceable if the "product of fraud or coercion.").

Medtronic falsely argues that Plaintiffs make no allegations of fraud of overreaching (Dkt. 16-1, pp. 17-18), and completely glosses over the record and ignores applicable law. *See, e.g.,* Dkt. 1, ¶12; Dkt. 5-3, ¶¶5-6; Dkt 13-4, ¶¶16-17. For a motion to dismiss based on the enforcement of a forum selection clause, such as here, courts treat it as a motion to dismiss for improper venue under Rule 12(b)(3) of the Federal Rules of Civil Procedure. *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996). And "in the context of a Rule 12(b)(3) motion based upon a forum selection clause, the trial court *must* draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party[.]" *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1138 (9th Cir. 2004) (emphasis added). Accordingly, this Court is required to credit Boykin's version of the facts and draw all reasonable inferences from Plaintiffs' allegations in Boykin's favor. At a minimum, the Court is required to conduct an evidentiary hearing if disputed facts exist. *Petersen v. Boeing Co.*, 715 F.3d 276, 283 (9th Cir. 2013) ("The district court therefore abused its discretion by granting [movant's] motion to dismiss without convening an evidentiary hearing.") Here, crediting Boykin's allegations and evidence, the Court must find in favor of Boykin on this factor.

### 4. Even If the Forum Selection Clause Were Enforceable Against Boykin, Federal Policy Concerns Deem it Unenforceable

Medtronic cannot deny that it does not make any argument supporting

9

enforcement of the forum selection clause *against Dexcom*.  Because it cannot make arguments for the first time on reply,[4] the Court should find in favor of Plaintiffs on this.  Since Medtronic fails to justify enforcement of the selection clause as to Dexcom, the Court should dismiss the forum selection clause entirely.  Any other result, such as denying enforcement of the clause as to Dexcom, but granting it as to Boykin, would be unwarranted splitting of the matter which goes against "the federal policy in favor of 'efficient resolution of controversies.'" *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. C 13-3349 SI, 2014 WL 1477748, at *2 (N.D. Cal. Apr. 14, 2014).  Requiring Dexcom to continue litigating issues in this forum, while Boykin litigates the same issues in Minnesota is "plainly contrary to the policy of the federal judiciary of promoting the consistent and complete adjudication of disputes." *Frigate Ltd. v. Damia*, No. C 06-04734 CRB, 2007 WL 127996, at *3 (N.D. Cal. Jan. 12, 2007).  This is the quintessential "unusual case" where a forum selection clause should not prevail. *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 66 (2013).

### 5. Medtronic Does Not Identify an Adequate Alternative Forum and the Private and Public Factors Support this Court Retaining Jurisdiction Over the Matter

Medtronic does not address how other factors strongly favor this Court retaining jurisdiction over this matter.  Rightly so perhaps because it is clear that when these factors are considered, they favor this Court's retention of jurisdiction.  Instead, Medtronic puts the cart before the horse, arguing that *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 63 (2013) instructs that courts adjust their section 1404(a) analysis where there is a valid forum selection clause. Dkt. 161, p. 16.  But the forum selection clause here is not valid and is unenforceable as noted above.

In the Ninth Circuit, before a court may dismiss the matter based on *forum non conveniens*, courts analyze whether an adequate forum exists and whether the private

---

[4] *United States v. Romm*, 455 F.3d 990, 997 (9th Cir. 2006)

and public interest factors favor dismissal. *Dole Food Co. v. Watts*, 303 F.3d 1104, 1118 (9th Cir. 2002). The private interest factors include: "(1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Carijano v. Occidental Petroleum Corp*., 643 F.3d 1216, 1229 (9th Cir. 2011) (internal citations omitted). The public interest factors include: "(1) the local interest in the lawsuit, (2) the court's familiarity with the governing law, (3) the burden on local courts and juries, (4) congestion in the court, and (5) the costs of resolving a dispute unrelated to a particular forum." *Bos. Telecommunications Grp., Inc. v. Wood*, 588 F.3d 1201, 1211 (9th Cir. 2009) (internal quotation marks and citations omitted).

Here, no adequate alternative forum exists. "An alternative forum ordinarily exists when defendants are amenable to service of process in the foreign forum." *Dole Food*, 303 F.3d at 1118. An alternative forum is adequate if "the other jurisdiction offers a satisfactory remedy." *Carijano v. Occidental Petroleum Corp*., 643 F.3d 1216, 1225 (9th Cir. 2011). If the alternative forum would not offer a practical remedy for the complained of wrong, the remedy is clearly inadequate. *Lueck v. Sundstrand Corp*., 236 F.3d 1137, 1144 (9th Cir. 2001). As noted above, because California has a materially greater interest in enforcing Business and Professions Code section 16600, and Minnesota does not have any comparable protections for California employees and employers, Minnesota is not an adequate alternative forum.

Further, both the private and public interest factors cut sharply in favor of Plaintiffs. As to the private interest factors, Plaintiffs are California residents and Medtronic, which is registered to do business in California, has an adequate presence here. Dkt. 1, ¶¶1-3. So, California would be convenient to all parties, unlike Minnesota which is inconvenient for Plaintiffs, who are not residents there. Because

11

two parties are residents in California, most of the evidence and witnesses are also in California, and because the issues in this case are predominantly legal, the cost of bringing witnesses is neutral.  Finally, a trial in California would be more efficient and less expensive for all parties in San Diego where Plaintiffs are residents and where Medtronic does business.  The public interest factors overwhelmingly favor Plaintiffs.  California has a very strong interest in this lawsuit enforcing California laws that have been validated since 1872.  Courts in this district are also substantially familiar with California Business and Professions Code section 16600.  Other public interest factors lean in favor of Dexcom and Medtronic's choice of forum or are neutral.

### B.   None of Medtronic's Arguments Divest Jurisdiction

Medtronic generally argues that the Court should dismiss or stay this matter and defer to the Minnesota court because Medtronic filed suit first.  Dkt. 16-1, p. 20, lns. 9-13.  But the "decision whether to exercise jurisdiction over a declaratory judgment action does not turn on which suit was filed first." *Regal Beloit Am., Inc. v. Power Right Indus., LLC*, No. EDCV141008PAPLAX, 2014 WL 12603114, at *2 (C.D. Cal. Oct. 6, 2014); *see also DeFeo v. Proctor & Gamble Co*., 831 F. Supp. 776, 779-80 (N.D. Cal. 1993) ("Courts have repeatedly rejected the 'first-to-file' rule in light of the policies governing declaratory relief.").  Thus, the mere fact that Medtronic beat Plaintiffs to the courthouse is of no import in this analysis.

### 1.   Brillhart Abstention Does Not Apply Because Plaintiffs Seek More than Declaratory Relief

Medtronic also argues that the Court should decline jurisdiction over the declaratory relief claims under *Brillhart*.  Dkt. 16-1, pp. 20-21.  But Medtronic's reliance on the *Brillhart/Wilton* abstention doctrine is misplaced.  When "the suit seeks more than merely declaratory relief, the *Wilton* abstention doctrine does not apply." *Broom v. Interact Commc'ns, Inc.*, No. 20-CV-2182 W (AGS), 2021 WL 778619, at *2 (S.D. Cal. Mar. 1, 2021).  The Ninth Circuit has noted that "[s]o long as the suit seeks more than merely declaratory relief, … the entire action should be analyzed

under the *Colorado River* framework." *Seneca Ins. Co., Inc. v. Strange Land, Inc.*, 862 F.3d 835, 840 (9th Cir. 2017); *see, e.g.*, *Am. Bankers Mgmt. Co., Inc. v. Heryford*, 885 F.3d 629, 633 (9th Cir. 2018) ("In addition to declaratory relief, however, American Bankers seeks injunctive relief that is independent of, but related to, the requested declaratory relief. *Brillhart* does not apply in such circumstances.").

Here, Plaintiffs assert a UCL cause of action, which through restitution, permits a court to make orders necessary to restore money or property a defendant acquires by wrongful conduct. Dkt. 1, ¶¶53-60. Plaintiffs also seek injunctive relief, as part of the UCL cause of action. *Id.*, p. 14. Plaintiffs UCL claim can survive even in the absence of the declaratory relief action because the mere inclusion of unlawful provisions violates California's unfair competition law. *Couch v. Morgan Stanley*, 2015 WL 4716297, at *20-21 (E.D. Cal. 2015). Because Medtronic fails to acknowledge that Plaintiffs seek more than declaratory relief, and completely ignores prevailing law, the Court should disregard Medtronic's dismissal arguments under *Brillhart*.

Medtronic's argument that other courts such as in *DeFeo v. Procter & Gamble Co.*, 831 F. Supp. 776 (N.D. Cal. 1993) and *Google, Inc. v. Microsoft Corp.*, 415 F. Supp. 2d 1018 (N.D. Cal. 2005) dismissed actions for declaratory relief do not compel a different result because the plaintiffs there asserted a single cause of action for declaratory relief, unlike here. Because Plaintiffs here seek more than declaratory relief, the Ninth Circuit instructs that a *Brillhart* analysis is unwarranted.

## 2. Colorado River Doctrine Does Not Apply to the UCL Claim

Medtronic rightly does not seek to stay or dismiss the declaratory relief causes of action because the test under *Colorado River* does not apply where the Declaratory Judgment Act is involved. *Chamberlain v. Allstate Ins. Co.,* 931 F.2d 1361, 1366 (9th Cir. 1991). Rather, Medtronic seeks to apply the doctrine only to the UCL cause of action. *See Dkt.* 16-1, pp. 21-22. But Medtronic fails to show why the Court should apply *Colorado River* to this matter.

"Under *Colorado River,* considerations of 'wise judicial administration, giving

13

regard to conservation of judicial resources and comprehensive disposition of litigation,' may justify a decision by the district court to stay federal proceedings pending the resolution of concurrent state court proceedings involving the same matter[.]" *Holder v. Holder*, 305 F.3d 854, 867 (9th Cir.2002) (citations omitted).  But *Colorado River* is not the norm; the doctrine is invoked only in exceptional circumstances.  *Colorado River*, 424 U.S. 817.  "Thus the party moving for a stay under *Colorado River* bears a heavy burden in justifying such an order." *Ally Bank v. Castle*, No. 11-CV-896 YGR, 2012 WL 3627631, at *3 (N.D. Cal. Aug. 20, 2012)

In applying *Colorado River*, courts considers factors including: (1) whether the state court first assumed jurisdiction over the property or the res; (2) inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) whether federal or state law provides the rule of decision on the merits; (6) whether the state court proceedings are inadequate to protect the federal litigant's rights; (7) whether exercising jurisdiction would promote forum shopping, and (8) whether the parallel state court proceeding will resolve the issues between the parties.  *Holder*, 305 F.3d at 870. Here, all applicable factors lean against applying *Colorado River* to the UCL cause of action.

First, the federal forum is convenient for all parties, Plaintiffs who are citizens in California, and Medtronic which is registered to do business and subject to process here in California.   On the other hand, the state court forum in Minnesota is inconvenient for Plaintiffs who are not residents and have no presence in Minnesota.

Second, applying *Colorado River* to only one cause of action, as Medtronic advocates (Dkt. 16-1, pp. 21-22), would result in the piecemeal litigation that the Declaratory Judgment Act and Colorado River aim to avoid.  *Colorado River*, 424 U.S. at 818 (1976).  The Court need not apply *Colorado River* for this fact alone.

Third, there is no ongoing state proceeding that could provide Plaintiffs' relief on their declaratory relief claims.  There is similarly no ongoing state proceeding that will resolve Plaintiffs' relief on their UCL claim.  The Minnesota State Action involves

completely different causes of action asserted under different state laws.  Thus, the Minnesota State Action is inadequate to protect Plaintiffs' rights.

Fourth, exercising jurisdiction over this matter does not promote forum shopping.  The fact that Plaintiffs are residents of California and filed suit in California to obtain a declaration of their rights under California law shows that they are not forum shopping.  The forum clearly has a substantive connection to the case.  *See Hendricks v. StarKist Co*., No. 13-CV-729 YGR, 2014 WL 1245880, at *3 (N.D. Cal. Mar. 25, 2014) ("The fact that a plaintiff lives in the transferor district and purchased the product at issue there suggests that plaintiff is not forum shopping.").

Finally, this action and the Minnesota State Action are not "parallel" under any reasonable interpretation.  None of the causes of action Plaintiffs assert are at issue in the Minnesota State Action.  Whereas Plaintiffs seek declaratory relief, injunctive relief, and assert a UCL cause of action *based on California law* under section 16600 here, in the Minnesota State Action, Medtronic asserts only causes of action for breach of contract, fraud, and intentional interference with contractual relations *under Minnesota law*.  Thus, a resolution of Medtronic's claims would not resolve the primary questions Plaintiffs present, i.e., whether Medtronic's use and enforcement of unlawful clauses is permissible under California law and whether it violates the UCL.

Because there is no concurrent state proceeding that "will resolve" Plaintiffs' declaratory relief and unfair competition claims (*Holder*, 305 F.3d at 870), the *Colorado River* doctrine does not apply.  *See Intel Corp. v. Advanced Micro Devices, Inc.,* 12 F.3d 908, 913 (9th Cir. 1993).  For each of the foregoing reasons, the Court should carry out its "virtually unflagging obligation" to exercise jurisdiction and grant relief on Plaintiffs' UCL claim rather than staying the claim.  *Vasquez v. Rackauckas*, 734 F.3d 1025, 1040, 1041 (9th Cir. 2013) (quoting *Gilbertson v. Albright*, 381 F.3d 965, 982 n.17 (9th Cir. 2004) (*en banc*)); *see also Colorado River*, 424 U.S. at 817.

/ / /

130494-00000002/5512306.7

**C.   The UCL Claim Survives Because It is Not Based On Protected Pre-Litigation or Litigation Activities.**

**1.   The UCL Claim Survives Under the *Noerr-Pennington* Doctrine and the Litigation Privilege Because It Is Not Based on Protected Activity**

Medtronic argues that this case should be dismissed pursuant to the *Noerr-Pennington* doctrine and California's litigation privilege under Civil Code section 47(b) which insulate Medtronic's conduct. Dkt 16-1, pp. 22-24. But Medtronic paints with far too broad a brush. To start, Medtronic *assumes* that Plaintiffs' UCL claim is premised on legitimate pre-petitioning and petitioning activity that is protected under the *Noerr-Pennington* doctrine and California's litigation privilege. Not so. Plaintiffs' UCL claim is not based on legitimate protected activity. *See, e.g.,* Dkt. 1, ¶¶53-60.

As numerous courts have stated, the reach of the *Noerr-Pennington* doctrine is not so extensive as to authorize all manner of conduct which private parties may engage in to achieve anticompetitive aims. *See, e.g., Rickards v. Canine Eye Registration Found.*, 783 F.2d 1329, 1334 (9th Cir. 1986) ("Immunity is not afforded to those who resort to sham or unfounded litigation solely for anticompetitive purposes."). Similarly, the litigation privilege applies only to protected communications made when litigation is imminent. *Edwards v. Centex Real Est. Corp.*, 53 Cal. App. 4th 15, 35 (1997). Here, the gravamen of the UCL claim is that the non-competition and non-solicitation clauses are illegal and unenforceable in California. The cause of action is based primarily on Medtronic's conduct of *inserting such clauses in its Employee Agreement. See* Dkt. 1, ¶¶54-59. This conduct by Medtronic occurred long before Medtronic started engaging in any allegedly protected efforts to enforce the unlawful provisions through its pre-litigation correspondence, and long before its subsequent suit against Dexcom and Boykin in Minnesota state court. As such, the conduct does not fit within the conduct insulated under the *Noerr-Pennington* doctrine and the litigation privilege.

**2.    The UCL Claim Survives Because It is Not Based On Extraterritorial Conduct by Medtronic.**

Medtronic also argues that the UCL claim should be dismissed "to the extent it is based on the mere existence of the non-compete provision" in the agreement, because that agreement was entered into outside California. Dkt. 16-1, pp. 24-25.  But this assumptive argument ignores the record.  Whereas Medtronic required Boykin to sign the Employment Agreement with the unlawful provisions while he was not a resident of California, Medtronic engaged in some of the accused conduct against a Dexcom and Boykin in California.  The mere fact that Plaintiffs are California residents *now* and would like a determination of their rights because they are affected by Medtronic's conduct makes the UCL applicable to them.  Medtronic points to no authority that precludes residents of California from asserting a UCL claim based on a foreign entity's use and attempted enforcement of unlawful non-compete clauses against them.  Absent such a showing, the Court should reject Medtronic's arguments.

None of Medtronic's authorities compels a different conclusion.  All the cases simply stand for the unremarkable proposition that the UCL can only be utilized by persons in California and those affected by conduct in California.  *See* Dkt. 16-1, p. 24 (citing *Aghaji v. Bank of Am., N.A.*, 247 Cal. App. 4th 1110, 1120 (2016) and other cases)  All of the cases involved conduct occurring outside California or plaintiffs purporting to assert on behalf of non-California individuals claims not arising in California.  None of the authorities apply here where two California residents are suing Medtronic for violations of California law through its unlawful use and attempted enforcement of unlawful provisions in restrain of their trade, professions, or business.

**3.    The UCL Claim Survives Under the Anti-SLAPP Statute Because It is Not based on Protected Activity and Plaintiffs Have a Reasonable Probability of Prevailing on the Claim.**

To determine whether a cause of action should be stricken under the anti-SLAPP statute, section 425.16 establishes a two-part test.  Only a cause of action that

satisfies both parts of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning and lacks even minimal merit—is a SLAPP, subject to being stricken. *L.A. Taxi Coop., Inc. v. The Indep. Taxi Owners Assn. of Los Angeles*, 239 Cal. App. 4th 918, 925–26 (2015).

### a.   The Challenged Conduct Is Not Protected Under 425.16

Section 425.16 (b) establishes a two-step process for resolving a special motion to strike. *Simpson Strong-Tie Co., Inc. v. Gore*, 49 Cal.4th 12, 21 (2010).  First, the defendant must make a prima facie showing that a plaintiff's cause of action arises from an act by the defendant in furtherance of the defendant's right of petition or free speech in connection with a public issue.  Cal. Civ. Proc. Code § 425.16, subd. (b)(1). If a defendant meets this threshold showing, the cause of action shall be stricken unless the plaintiff can establish a probability of prevailing on the claim. *Id*.

As noted above, the challenged conduct is primarily based on Medtronic's conduct of inserting unlawful provisions in its Employee Agreements – conduct that occurred long before Medtronic commenced any prelitigation or litigation activities. But for conclusory assertions, Medtronic does not show that this conduct arises from its acts in furtherance of its rights to petition or speech.  But for attempts to broadly paint Plaintiffs' claims as seeking to stop the ongoing litigation in Minnesota, Medtronic also does not identify any allegations in Plaintiffs' Complaint that illustrate that any of the accused conduct is protected activity under the anti-SLAPP statute.

Because Medtronic fails in its threshold showing, the Court need analyze this further. *Rouse v. L. Offs. of Rory Clark*, 465 F. Supp. 2d 1031, 1038 (S.D. Cal. 2006)

### b.   Plaintiffs Have a Reasonable Probability of Prevailing

But even if the Court were to deem Medtronic's showing adequate, the Court should rule in Plaintiffs' favor because Plaintiffs can meet the second prong of the anti-SLAPP analysis.  For this prong, Dexcom and Boykin need only show that they have a "reasonable probability" of prevailing on their UCL claim. *Davis v. Elec. Arts Inc*., 775 F.3d 1172, 1177 (9th Cir. 2015).  In the anti-SLAPP context, "reasonable

18

probability" has a special meaning and requires only a "'minimum level of legal sufficiency and triability.'" *Mindys Cosms., Inc. v. Dakar*, 611 F.3d 590, 598 (9th Cir. 2010) (quoting *Linder v. Thrifty Oil Co.*, 23 Cal.4th 429, 438 n. 5 (2000)).

Plaintiffs can certainly meet the "minimum level of legal sufficiency and triability" on their UCL claim that using and enforcing Medtronic's restrictive covenants against California employees and their employers violates Business and Professions Code section 17200, *et seq.* The heart of the claim is that the restrictive covenants contained in Medtronic's Employee Agreement are unenforceable against Boykin and Dexcom, a non-signatory to the agreement who is not subject to Minnesota jurisdiction. Plaintiffs will prevail on the claim because California law overwhelmingly supports their position that such provisions, no matter how craftily worded, are unenforceable. *Golden v. California Emergency Physicians Med. Grp.*, 896 F.3d 1018, 1021–22 (9th Cir. 2018). As the California Supreme Court explained:

> [O]ur courts have consistently affirmed that section 16600 evinces a settled legislative policy in favor of open competition and employee mobility. The law protects Californians and ensures that every citizen shall retain the right to pursue any lawful employment and enterprise of their choice. It protects the important legal right of persons to engage in businesses and occupations of their choosing.

*Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 946, 189 P.3d 285, 291 (2008).

The only exceptions to the broad ban on restrictive covenants under section 16600, are those listed in sections 16601 through 16603 which do not apply. *Fillpoint, LLC v. Maas*, 208 Cal. App. 4th 1170, 1177 (2012).[5] And Medtronic cannot reasonably argue that any of the clauses at issue here satisfy the Ninth Circuit's alternative "reasonableness standard" because the unlawful non-compete and non-solicitation clauses have the effect of suppressing, not promoting, competition. *See*

---

[5] Exceptions for (1) sales of goodwill of a business or disposition of ownership interest in the business entity; (2) dissolution of the partnership or dissociation of the partnership or dissociation of a partner from the partnership; and (3) dissolution or sale of a limited liability company. *See* Cal. Bus. & Prof. Code §§ 16601-03.

*Ixchel Pharma, LLC v. Biogen, Inc*., 9 Cal. 5th 1130, 1159, 470 P.3d 571, 588 (2020). For these reasons, Plaintiffs have a reasonable probability of prevailing on their claim.

**D.     The Court Should Not Dismiss the Complaint Under Rule 12(b)(7) Because MiniMed is Neither a Necessary Nor Indispensable Party**

Medtronic finally argues that this case should be dismissed under Rule 19 of the Federal Rules of Civil Procedure because MiniMed is an indispensable party who cannot be joined without defeating diversity jurisdiction. Dkt. 16-1, pp. 28-30. While Rule 12(b)(7) allows dismissal for failure to join a necessary and indispensable party, the party seeking dismissal bears the burden of persuasion on that issue. *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990). Here, Medtronic's argument for dismissal lacks a basis in law or fact. As Medtronic concedes, MiniMed cannot be added under Rule 19 (a) because adding it will defeat subject matter jurisdiction. *See* Dkt. 16-1, p. 29, lns.  18-24. Thus, whether dismissal is appropriate turns on if MiniMed is "necessary" under Rule 19(a), and if so, whether it is "indispensable" under Rule 19 (b). *Jamul Action Comm. v. Simermeyer*, 974 F.3d 984, 996 (9th Cir. 2020). But as Medtronic notes, the Rule 19 analysis is "heavily influenced by the facts and circumstances of each case" and is not simply formulaic. *Bakia v. Los Angeles Cty. of State of Cal*., 687 F.2d 299, 301 (9th Cir. 1982). An analysis of the facts and circumstances here illustrates that MiniMed is neither necessary nor indispensable.

**1.     MiniMed Is Not a Necessary Party**

To determine if the absent party is necessary to the suit under Rule 19(a), the court must undertake a two-part analysis. First, the court determines if in the absence of the party "complete relief cannot be accorded among those already parties." Fed. R. Civ. P. 19(a)(1)(A). This initial analysis is independent of whether relief is available to the absent party. *Makah Indian Tribe*, 910 F.2d at 558.   Second, the court determines whether the absent party has a legally protected interest in the suit, and if the party is so situated that disposing of the action in the party's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii)

leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.  Fed. R. Civ. P. 19(a)(1)(B); *N.D. ex rel. parents acting as guardians ad litem v. Hawaii Dep't of Educ.*, 600 F.3d 1104, 1109 (9th Cir. 2010).  But the interest at issue must be more than a financial stake or speculation about a future event. *Makah Indian Tribe*, 910 F.2d at 558; *McLaughlin v. Int'l Ass'n of Machinists*, 847 F.2d 620, 621 (9th Cir. 1988).

As the party who bears the burden of persuasion, Medtronic falls far short of showing how MiniMed is a "necessary" party.  But for conclusory assertions, it does not show how complete relief cannot be accorded among existing parties in its absence.  At best, Medtronic argues MiniMed is necessary "because, as Boykin's employer, MiniMed is a party to the Agreement and has a legally protected interest in its customer goodwill, its confidential information, and Boykin's post-employment it is a necessary party because Boykin received MiniMed's confidential information during his employment." *Id*, lns.10-11.  Finally, it argues that failure to join MiniMed will subject it to multiple inconsistent *rulings* because MiniMed is a party to the Minnesota State Action, where the court has already made some rulings. *Id*., lns. 12-17.  But none of these conclusory arguments contain any facts that support dismissal.

Medtronic's argument that MiniMed is a necessary party because MiniMed is Boykin's employer and a party to the Employee Agreement appears to be based on a definition of "Medtronic" under the Employee Agreement.  *See* Dkt. 16-1, p. 11, lns. 17-24; Dkt. 1, Ex.1.  Employee Agreement, § 1.6.  But that conclusory assertion that MiniMed was Boykin's employer and a party to the Employee Agreement does not render MiniMed a necessary party under Rule 19(a).  Notably, the name MiniMed is not mentioned anywhere in the Employee Agreement.  *See* Dkt. 1, Ex.1.  Moreover, Medtronic has not offered any evidence showing that MiniMed, a legally separate entity from Medtronic, employed Boykin or that it is MiniMed, a wholly separate entity from Medtronic, that entered into the Employee Agreement with Boykin.  To the contrary, Medtronic argues that it hired Boykin, Dkt. 16-1, p. 9, 18-26, and that it

21

entered into the Employee Agreement with Boykin.  *Id.*, p. 10, lns.  1-7.  At best, Medtronic's argument is simply that MiniMed is a joint tortfeasor against Boykin and Dexcom.  But a joint tortfeasor is not "necessary" under Rule 19(a).  *Forti v. Suarez-Mason*, 672 F. Supp. 1531, 1552 (N.D. Cal. 1987).  As a joint tortfeasor, Medtronic offers no reason complete relief cannot be accorded among the remaining parties.

The argument that "MiniMed" is a necessary party because it fits within the broad definition under the Employee Agreement also goes contrary to the principles underlying a Rule 19(a) analysis.  Under Medtronic's theory, MiniMed would <u>not</u> be the only "necessary" party to this dispute.  Other "necessary" parties include <u>potentially hundreds or thousands</u> of entities Medtronic directly or indirectly, wholly or partially owns or controls, or that fit within the broad definition.  Certainly, this cannot be what Congress intended under Rule 19 and Rule 12(b)(7).  Such a tortured interpretation virtually insulates most multi-jurisdictional entities from suits based on diversity jurisdiction because such entities have interests, wholly or partially in several entities around the world.  Medtronic offers no authority for such an interpretation. And none of the cases it cites suggest, even remotely, that an associated entity like a subsidiary, parent, or other affiliate to the entity that signed the contract may be deemed a "necessary" party simply by virtue of that entity being broadly included in an all-encompassing definition in the subject contract.  In *Dawavendewa v. Salt River Project Agr. Imp. & Power Dist.*, the plaintiff challenged the defendant's contract with the Navajo Nation, but failed to join the Navaho Nation, a signatory to the contract. 276 F.3d 1150, 1153 (9th Cir. 2002).  Similarly, in *Lomayaktewa v. Hathaway*, the plaintiff brought an action to void the lease between the Hopi Tribe and the Peabody Coal Company but failed to add the Hopi Tribe as a party to the suit.  520 F.2d 1324, 1325 (9th Cir. 1975).  Clearly, neither case supports the argument that MiniMed, a separate entity, is a necessary party under Rule 19(a).

Medtronic's argument that MiniMed is a necessary party because "Boykin received MiniMed's confidential information during his employment" also lacks a

basis in fact or law.  Dkt. 16-1, p. 29, lns. 10-11.  Notably, while Medtronic refers to Section II.B of its brief for the factual support for this assertion, that section, aptly titled "*Medtronic* Hires Boykin," only concerns Medtronic (a separate entity from MiniMed) and Boykin, and at best states, "In order for Boykin to effectively carry out his responsibilities, *Medtronic* provided Boykin with confidential and proprietary information discussed above." Dkt. 16-1, p. p, lns. 23-25 (emphasis added).  Nowhere does the section refer to Boykin receiving confidential information from MiniMed, a wholly separate entity from Medtronic.  But even if the section disclosed that Boykin had allegedly received confidential information from MiniMed, Medtronic cites no authority for the proposition that receiving an entity's confidential information renders the providing entity a necessary party under Rule 19.  This is especially so here where none of the causes of action relates to misappropriation of confidential information.

Medtronic's final argument that failure to join MiniMed would subject MiniMed to multiple inconsistent *rulings* is also conclusory and conflates issues.  In the Rule 19 context, "inconsistent obligations" is not the same as "inconsistent adjudications or results." *Cachil Dehe Band of Wintun Indians of the Colusa Indian Cmty. v. California*, 547 F.3d 962, 976 (9th Cir. 2008).  Inconsistent obligations occur when a party is unable to comply with one order without breaching another court's order. *Id*.  Thus, the fact that there are two pending proceedings does not automatically mean that MiniMed would be subject to multiple inconsistent *obligations*.  The causes of action here are different and depend on different state laws. *See* Dkt. 5-6; Dkt. 1.  While the suits may involve related matter about enforceability of the non-compete or non-solicitation provisions, this does not translate to "inconsistent obligations" especially since different state laws are involved.  Because Medtronic offers nothing more than conclusory argument about inconsistent rulings (not *obligations*), the Court should decline to consider MiniMed a necessary party under Rule 19(a).

### 2.    MiniMed Is Not an Indispensable Party

Because Medtronic does not show that MiniMed is a necessary party, the Court

130494-00000002/5512306.7

need not analyze whether it is indispensable.  *Est. of Mendez v. City of Ceres*, 390 F. Supp. 3d 1189, 1199 (E.D. Cal. 2019).  But even assuming the Court finds that MiniMed is necessary, dismissal is not warranted.  If a party is necessary, the court must then determine whether the party is indispensable under Rule 19(b).  *E.E.O.C. v. Peabody W. Coal Co*., 610 F.3d 1070, 1078 (9th Cir. 2010).  In that respect, the court considers four factors: "(1) the extent to which a judgment rendered in the person's absence might prejudice that person or existing parties; (2) the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder." Fed. R. Civ. P. 19(b); *Lomayaktewa v. Hathaway*, 520 F.2d 1324, 1326 (9th Cir. 1975).

Here, a cursory analysis of the factors reveals that MiniMed is not indispensable.  Medtronic argues in generalities that if this Court grants Plaintiffs relief, "it would result in the invalidation of the Agreement, and therefore eradication of MiniMed's contractual rights to protect its confidential information or continue to enforce the Order granted in the Minnesota State Action" (Dkt. 16-1, p. 29 lns.  25-28 & p. 30, lns.  1-2).  But Plaintiffs do not seek to invalidate the Employee Agreement *in toto*; only the provisions that are unenforceable against them under California law.

Moreover, a judgment rendered in MiniMed's absence would be adequate because any interests it claims can be adequately represented by Medtronic – the parent entity.  *See* Dkt. 5-6, Ex. 7, p.25, ¶2 (describing MiniMed as a wholly-owned subsidiary of Medtronic MiniMed, Inc., which is a wholly owned subsidiary of Medtronic).  When the interests of an absent party are "adequately protected by those who are present," prejudice to the absent party is mitigated and joinder is unwarranted. *In re Allustiarte*, 786 F.2d 910, 919 (9th Cir. 1986).  Further, when a plaintiff seeks to hold a parent entity liable, a subsidiary is neither necessary nor indispensable.  *In re Toyota Motor Corp*., 785 F. Supp. 2d 883, 905 (C.D. Cal. 2011).  This is "because the

24

corporate parent's interests are presumed identical to its subsidiaries' and the parent has an identical incentive to defend the action." *MegaFon PJSC v. Hewlett Packard Enter. Co.*, No. 18-CV-06463-NC, 2019 WL 1130481, at *2 (N.D. Cal. Mar. 12, 2019). Medtronic offers nothing to rebut this presumption. As the ultimate parent entity, Medtronic's interests here are 100% identical to MiniMed's. Medtronic can adequately represent the entity. Any conceivable prejudice to MiniMed may be lessened by the Court fashioning relief or obligations to include MiniMed, the wholly-owned downstream subsidiary. Thus, a judgment would be adequate as to all involved parties, including MiniMed. But if the case is dismissed, Plaintiffs would be deprived of the opportunity to assert their rights under California law.

Accordingly, the Court should deny Medtronic's motion to dismiss based on failure to join under Rule 19 because MiniMed is neither necessary nor indispensable.

**IV. CONCLUSION.**

Medtronic does not meet the standards for dismissal under the federal rules. It bears repeating that the two pending disputes are not parallel or identical. While the matters may involve some cross-over arguments about the non-compete provisions in the Employee Agreement, that does not warrant dismissal. As the California Supreme Court noted in *Medtronic, Inc. v. Advanced Bionics Corp*., 29 Cal. 4th 697 (2002), two declaratory relief actions over a non-compete agreement can proceed in parallel even if they are pending in different states and each court applies different state laws. This case is no different simply because this matter is in federal court. Accordingly, Plaintiffs request that this Court deny Medtronic's motion to dismiss in its entirety.

DATED: November 15, 2021

PROCOPIO, CORY, HARGREAVES & SAVITCH LLP

By:  /s/ Brook T. Barnes
    Marie Burke Kenny
    Brook T. Barnes
    Nicholas Kawuka
    Attorneys for Plaintiff Charles Boykin

25

21-cv-1677-CAB-LL

130494-00000002/5512306.7